UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| Julian Flores aka Julian Flores Sanchez, | No. |
| Plaintiff, | **COMPLAINT** |
| v. | DEMAND FOR JURY TRIAL |
| Wells Fargo Bank, N.A., | |
| Defendant. | |

COMES NOW Plaintiff, Julian Flores aka Julian Flores Sanchez, by and through counsel and brings this action for damages caused by Defendant Wells Fargo's mishandling of payments made in Plaintiff's Chapter 13 bankruptcy plans which constitutes breach of contract, violations of 11 U.S.C. 524 (i), the Washington Consumer Protection Act, RCW 19.86, *et seq.*, and tort laws, and states the following allegations:

## I.    JURISDICTION AND VENUE

1.    Defendant's conduct violates the bankruptcy discharge injunction in direct violation of 11 U.S.C. 524(i).

2.    Defendant's conduct also violates the Washington Consumer Protection Act, RCW 19.86, *et seq.*, and tort laws.

3.    Based on the below factual allegations, this Court has diversity jurisdiction pursuant to 28 U.S. Code § 1332 because every party in this lawsuit is a citizen of a different state, and the amount in dispute exceeds $75,000.

**BARRAZA LAW PLLC**
10728 16TH AVE SW SEATTLE WA 98146
206-933-7861 phone 206-933-7863 fax

4.      The Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (general federal question), and supplemental jurisdiction exists for state law claims pursuant to 28 U.S.C. § 1367(a).

5.      Declaratory relief is available pursuant to 28 U.S.C. §§2201 and 2202.

6.      Venue is proper in this District under 28 U.S.C. §1391(b) because the Defendant conducts affairs and transacts business in this District, the unlawful acts giving rise to this complaint occurred in this District, and the Plaintiff resides in this District.

## II.      PARTIES

7.      Plaintiff Flores owns and lives at the real property located at 30845 10th Ave SW, Federal Way, WA 98023-4501 ("the Property"), which was pledged as collateral for the mortgage loan account *****0083 ("the Loan").

8.      Defendant Wells Fargo Bank, N.A. ("Wells Fargo") is a national bank and loan servicer of the Loan until approximately July 31, 2020.

## III.      FACTUAL ALLEGATIONS

9.      Plaintiff purchased the Property on or about May 27, 2004 and has been using it as his homestead.[1] He obtained a refinancing loan, the Loan, from World Savings Bank, FSB which is secured by the Property (See King County, Washington Instrument 20060714000913). As a result of the economic crisis, Mr. Flores defaulted on his mortgage loans for the subject property as well as three other real properties he owned. Defendant Wells Fargo claims to be owning or holding the Loan.

10.     As a result of needing reorganization, Plaintiff filed for Chapter 13 bankruptcy protection on September 11, 2011, in the Western District of Washington Bankruptcy Court, under case 11-20512. The bankruptcy schedules list all three real properties: the Property, another located at 30414 1st Place South, Federal Way, WA 98003 (which he co-owned with

---

[1] Mr. Flores married on August 20, 2017 but the property is separate property because he was single when he purchased his home and when he filed for bankruptcy.

BARRAZA LAW PLLC
10728 16TH AVE SW Seattle WA 98146
206-933-7861 phone 206-933-7863 fax

COMPLAINT - 2

two relatives), and a third property located at 1410 South 282nd Pl, Federal Way, WA 98003 (which he co-owned with one relative).

11.     Plaintiff's Confirmed Bankruptcy Plan provided Plaintiff with specific relief, allowing him to surrender the property located at 1410 S 282nd Place; to surrender 30414 1st Place South and be released from the indebtedness of $44,000 which was the second mortgage on the property.  Most importantly, Plaintiff would have been able to cure any arrears and reinstate the Loan on the Property as his homestead [Dkt. 43].

12.     Over the course of the Chapter 13 bankruptcy, Plaintiff made 75 timely mortgage payments to Wells Fargo through the Chapter 13 Trustee totaling $140,150. The bankruptcy never completed and it was ultimately dismissed. Therefore, Plaintiff and his co-borrowers had to sell the 30414 1st Avenue South Property at a loss and pay the $44,000 indebtedness in full.

13.     During the pendency of the bankruptcy case, the Chapter 13 Trustee filed a "Notice of Final Cure Payment" on May 10, 2017, obligating Wells Fargo to confirm whether it considered the underlying default have been cured [Dkt. 86]. On May 31, 2017, Wells Fargo advised in writing that Plaintiff had cured the pre-petition mortgage default through the bankruptcy plan payments.

14.     However, Wells Fargo claimed that Plaintiff owed eight *post-petition* mortgage payments, or $15,663.12 for the period October 15, 2016 through May 15, 2017 despite the fact Plaintiff timely tendered all monies owed under his confirmed bankruptcy plan which included all post-petition mortgage payments, and the account was in fact current [Docket notation of May 31, 2017].

15.     As a result of Wells Fargo's failure to accurately record and report all payments made by the Plaintiff, he could not obtain a discharge. The failure to obtain a discharge resulted in the forgoing losses, as well as the repossession of two vehicles that Plaintiff used for work, leaving him with a deficiency of $13,025.08, for which he remains liable to this day [Dkt. 97].

16.     Based on Wells Fargo's calculation, Plaintiff had to pay the alleged arrears on the Loan in the amount of $15,663.12.  As a result of Wells Fargo's misapplication of Plaintiff's

COMPLAINT - 3

BARRAZA LAW PLLC
10728 16TH AVE SW SEATTLE WA 98146
206-933-7861 phone 206-933-7863 fax

payment and therefore miscalculation of the amount due and owing on his mortgage loan, Plaintiff was denied the financial fresh start he so desperately needed and was entitled to obtain.

17.     Because English is Plaintiff's second language, he had extreme difficulty obtaining help to communicate with Wells Fargo about the Loan. Plaintiff finally retained the undersigned as a bilingual lawyer,  and on or about January 12, 2018, counsel notified Wells Fargo that it now represented Plaintiff, requesting for  all further communications be directed to Barraza Law, PLLC.

18.     Around this period of time, Wells Fargo had determined the Loan to be seriously delinquent and he was compelled to submit a loan modification package to Wells Fargo in order to save his home from foreclosure.

19.     On February 22, 2018, Wells Fargo acknowledged receipt of Plaintiff's written "inquiry," and responding that he can expect a reply by March 7, 2018.

20.     On March 6, 2018, Wells Fargo acknowledged receipt of Plaintiff's inquiry extending the response date to March 20, 2018.

21.     On March 12, 2018, Wells Fargo inexplicably sent correspondence to borrower's bankruptcy counsel, instead of Barraza Law, announcing, "**we are not moving forward with a review of the mortgage for assistance. We based our decision on a review of the mortgage history, the recent information you provided us, and the current circumstances surrounding the mortgage**." Wells Fargo did not explain what it meant by "the current circumstances surrounding the mortgage."

22.     On March 19, 2018, Wells Fargo again acknowledged Plaintiff's original inquiry and extended the response date to April 2, 2018.

23.     On March 27, 2018, Wells Fargo acknowledged receipt of inquiry from Plaintiff's attorney, and reiterated that it would not consider a payment assistance review because it determined that there had not been a "large enough change since your last review to consider a new review." There was never any "last review" made by Wells Fargo of Plaintiff's request for mortgage assistance.

COMPLAINT - 4

**BARRAZA LAW PLLC**
10728 16TH AVE SW SEATTLE WA 98146
206-933-7861 phone 206-933-7863 fax

24.    On March 29, 2018, Wells Fargo served Mr. Flores with a statutory Notice of Pre-Foreclosure Options. That same day, it also informed him that approximately $222.72 of his payment had been placed in "unapplied account funds."

25.    The Notice of Pre-Foreclosure Options caused Plaintiff to panic. He was angry, confused, and feeling despair that he would end up losing his house even though Wells Fargo was the one that screwed up his mortgage account entirely. During this time, Plaintiff never stopped making payments toward the Loan.

26.    Wells Fargo notified Plaintiff that the Loan was accelerated as of April 2, 2018.

27.    On April 3, 2018, Wells Fargo rejected a mortgage payment made earlier by the Plaintiff.

28.    On April 8, 2018, Wells Fargo notified the Plaintiff directly, with full knowledge that he is represented by counsel, and informed him of a delinquent amount of $13,424.60 as of April 2, 2018.

29.    On April 12, 2018, Plaintiff, through his counsel, served Wells Fargo with a statutory Request for Information ("RFI"), pursuant to the Real Estate Procedure Act, asking Wells Fargo to explain the basis for the delinquency given the fact that payments were made timely and completely through the bankruptcy plan. Wells Fargo acknowledged the RFI by letter dated April 16, 2018 and informed Plaintiff that a response to his inquiry would be provided by April 30, 2018.

30.    On April 18, 2018, Plaintiff paid the amount demanded by Wells Fargo to reinstate the loan in order to save his home from foreclosure.

31.    On April 19, 2018, Plaintiff, through his counsel, served Wells Fargo with a statutory notice of error ("NOE") informing the bank specifically of seven separate errors it made, including (1) communicating with a represented borrower; (2) erroneously returning $12,953.72 to the bankruptcy trustee in Plaintiff's bankruptcy case on or around February 5, 2016; (3) failing to file an amended response to Notice of Final Cure after account reconciliation in Plaintiff's bankruptcy case; (4) failing to process Plaintiff's 2018 loan modification

BARRAZA LAW PLLC
10728 16TH AVE SW SEATTLE WA 98146
206-933-7861 phone 206-933-7863 fax

application; (5) failing to apply an extra overpayment of $233.23 to principal for the December 2017 payment; (6) failing to correctly apply payments from Plaintiff's bankruptcy trustee; and (7) filing an erroneous or incomplete Response to Final Cure with the bankruptcy court.

32.     On April 30, 2018, Wells Fargo informed Plaintiff it would respond to his "inquiry" without specifying whether it meant the RFI, the NOE, or any other inquiry made by him previously, by May 9, 2018.

33.     On May 4, 2018, Wells Fargo informed Plaintiff that he could contact Justin Hill, a Home Preservation Specialist to assist him navigate the "mortgage assistance process." Wells Fargo's gesture proved meaningless in that Plaintiff had to pay the amount demanded by the bank to stave off the foreclosure.

34.     On May 9, 2018, Wells Fargo informed Plaintiff it would now respond to his "inquiry" by May 23, 2018.

35.     On May 17, 2018, Wells Fargo sent Plaintiff a letter with the subject line reading, "[u]pdate to the *inquiries* received about Julian Flores, account number ******0083" (emphasis added). The letter stated that Wells Fargo has "initiated a new review for possible payment options."

36.     On May 23, 2018, Wells Fargo sent Plaintiff a letter informing him it would respond to his "inquiries" by June 7, 2018.

37.     On June 7, 2018 Wells Fargo sent Plaintiff a letter informing him it would respond to his "inquiries" by June 21, 2018.

38.     On June 15, 2018, Wells Fargo sent Plaintiff a check for $1,732.79, as an "escrow refund" without any further explanations. Having been burned by which Plaintiff returned to Wells Fargo.

39.     On June 21, 2018, Wells Fargo sent Plaintiff a letter informing him it would respond to his "inquiries" by July 6, 2018.

40.     On July 6, 2018, Wells Fargo sent Plaintiff a letter informing him it would respond to his "inquiries" by July 20, 2018.

COMPLAINT - 6

41.     On July 20, 2018, Wells Fargo sent Plaintiff a letter informing him it would respond to his "inquiries" by August 3, 2018.

42.     On August 3, 2018, Wells Fargo sent Plaintiff a letter informing him it would respond to his "inquiries" by August 17, 2018.

43.     On August 17, 2018, Wells Fargo sent Plaintiff a letter informing him it would respond to his "inquiries" by August 31, 2018.

44.     On August 31, 2018, Wells Fargo sent Plaintiff a letter informing him it would respond to his "inquiries" by September 17, 2018.

45.     On September 17, 2018, Wells Fargo sent Plaintiff a letter informing him it would respond to his "inquiries" by October 1, 2018.

46.     On October 1, 2018, Wells Fargo sent Plaintiff a letter informing him it would respond to his "inquiries" by October 16, 2018.

47.     On October 16, 2018, Wells Fargo sent Plaintiff a letter informing him it would respond to his "inquiries" by October 30, 2018.

48.     On October 17, 2018, Wells Fargo demanded for Plaintiff's counsel to verify if legal representation is still ongoing.

49.     On October 30, 2018 Wells Fargo sent Plaintiff a letter informing him it would respond to his "inquiries" by November 14, 2018.

50.     On November 14, 2018 Wells Fargo sent Plaintiff a letter informing him it would respond to his "inquiries" by November 29, 2018.

51.     On November 29, 2018 Wells Fargo sent Plaintiff a letter informing him it would respond to his "inquiries" by December 13, 2018.

52.     On December 13, 2018 Wells Fargo sent Plaintiff a letter informing him it would respond to his "inquiries" by December 28, 2018.

53.     On December 28, 2018 Wells Fargo sent Plaintiff a letter informing him it would respond to his "inquiries" by January 11, 2019.

BARRAZA LAW PLLC
10728 16TH AVE SW SEATTLE WA 98146
206-933-7861 phone 206-933-7863 fax

54.     On January 11, 2019 Wells Fargo sent Plaintiff a letter informing him it would respond to his "inquiries" by January 28, 2019.

55.     On January 28, 2019 Wells Fargo sent Plaintiff a letter informing him it would respond to his "inquiries" by February 11, 2019.

56.     On February 6, 2019, Wells Fargo demanded for Plaintiff's counsel to verify whether legal representation is still ongoing.

57.     On February 11, 2019 Wells Fargo sent Plaintiff a letter informing him it would respond to his "inquiries" by February 26, 2019.

58.     On February 22, 2019, Wells Fargo sent Plaintiff "a check in the amount of $13,195.11 per customer refund request." The check, number 7035529973 was dated February 21, 2019 in the amount of $13,195.11 and labeled "for misapplication reversal." Plaintiff in fact had not made any request for refund, but simply for Wells Fargo to fully account for all payments he had made toward the Loan.

59.     On February 26, 2019 Wells Fargo sent Plaintiff a letter informing him it would respond to his "inquiries" by March 12, 2019.

60.     On March 5, 2019, Wells Fargo sent a letter to Plaintiff entitled "Resolution to the inquiry we received from Julian Flores…"  This particular correspondence admitted, for the first time, that "[d]uring the bankruptcy there was a delay in the posting of payments."  Wells Fargo stated further, "[s]ince recognizing this situation we have updated our system and ensured that the payments we have received match the terms of the bankruptcy plan. We apologize that our customer had to spend time addressing the matter." Since the bankruptcy did blow up and it had been in the rear view mirror for more than two years, by this time, Wells Fargo's concession rang hollow.

61.     Wells Fargo's March 5, 2019 correspondence further admitted, "[d]ue to the delay in the payment posting, Julian Flores received corrected 1098 tax forms for 2013 and 2014. We understand that this may require changes to the tax returns that were previously filed." Wells

Fargo's March 5, 2019 correspondence further indicated, "[o]n October 1, 2015, we moved Mr. Flores' account from Wachovia to Wells Fargo Home Mortgage's servicing system."

62.    Although Wells Fargo never explained fully what had happened, it appears that it was laboring under excess funds in Plaintiff's escrow account in the amount of $12,953.72, Wells Fargo sent the bankruptcy trustee the escrow refund check, dated December 21, 2015, number 7029747026 in the amount of $12,953.73. The bankruptcy trustee's ledger/records reflect the check was received on February 5, 2016.

63.    Wells Fargo's March 5, 2019 correspondence also stated, "[a]fter further review, a business decision was made to remediate funds in the amount of $13,195.11. Check number 7035529973 in the amount of $13,195.11 was sent payable to Julian Flores and sent via overnight FedEx tracking number 785645881083. Thank you for your patience *while we researched the account.*"

64.    On or about April 7, 2019, Plaintiff's counsel sent a letter to Wells Fargo informing Wells Fargo that Plaintiff intended to commence litigation against Wells Fargo because its actions deprived Mr. Flores of his bankruptcy discharge and damaged his financial status.

65.    On April 11, 2019, Wells Fargo responded that it received the inquiry and would respond by April 25, 2019.

66.    On April 25, 2019, Wells Fargo informed Plaintiff it would respond to his April 7, 2019 inquiry by May 9, 2019.

67.    On May 9, 2019, Wells Fargo informed Plaintiff that it would respond to his April 7, 2019 inquiry by May 23, 2019.

68.    On May 23, 2019, Wells Fargo informed Plaintiff that it would respond to his April 7, 2019 inquiry by June 7, 2019.

69.    On June 7, 2019, Wells Fargo informed Plaintiff that it would respond to his April 7, 2019 inquiry by June 14, 2019.

70.    On June 11, 2019, Wells Fargo sent Plaintiff another escrow refund check in the amount of $1,968.37.

BARRAZA LAW PLLC
10728 16TH AVE SW SEATTLE WA 98146
206-933-7861 phone 206-933-7863 fax

71.     On June 14, 2019, Wells Fargo confirmed that Plaintiff could cash the $13,195.11 check without waiving his claims against Wells Fargo. On June 17, 2019, Plaintiff's counsel deposited the $13,195.11 check into the firm's trust account on behalf of the Plaintiff.

72.     Based on his own accounting and being prompted by Wells Fargo's admissions of error, Plaintiff hired nationally renowned mortgage expert Bernard Jay Patterson to research his mortgage account. Mr. Patterson found that Wells Fargo misapplied Plaintiff's post-petition payments to the escrow account which caused an overage in the escrow balance, and a deficiency in the mortgage account that otherwise would not have existed. Moreover, Mr. Patterson determined that Wells Fargo conducted numerous escrow analyses based upon its own misapplications and in the process, thereby causing additional errors, and allowing the alleged "default" to grow continuously. Most importantly, Wells Fargo's determination of the overpayment amount of $12,953.72 which it sent to the Chapter 13 Trustee, was incorrect.

73.     Mr. Patterson found if Wells Fargo had correctly applied payments during the five-years of bankruptcy, the account would not have been delinquent at all. In fact, Wells Fargo's failure to properly apply Plaintiff's payments in a correct and timely manner caused interests to accrue uncontrollably thereby hugely inflating the amount of the Loan over the course of several years.

74.     What Wells Fargo has done to Plaintiff is not an isolated incident but a part of Wells Fargo's well-documented pattern of mishandling of payments made by debtors in chapter 13 cases.  Evidence of this pattern is found in the Settlement between Wells Fargo and the U.S. Trustee Office, *In re Ernestine C.J. Green*, U.S. Bankruptcy Court for the District of Maryland case number 11-33377-TJC. There, Wells Fargo identified thousands of accounts being affected with "systemic issues" relating to the program it used to analyze escrow accounts.  In the same Settlement Agreement, Wells Fargo committed to taking certain actions to remedy such "systemic issues." https://www.justice.gov/ust/file/wells_fargo_settlements.pdf/download

BARRAZA LAW PLLC
10728 16TH AVE SW SEATTLE WA 98146
206-933-7861 phone 206-933-7863 fax

75.     Although the systemic issues of Wells Fargo's system were identified as early as March of 2013, it appears that Wells Fargo still was not able to remedy the problem but allowed it to victimize many other borrowers, including the Plaintiff.

76.     The time that it has taken the Plaintiff to straighten things out with Wells Fargo went on for more than two years, during which time Wells Fargo promised to review Plaintiff's complaint and provide redress in 30 separate occasions. Being under a financial strain was not enough to break up the Plaintiff's marriage, but his inability to rein in the mortgage loan caused his wife to ultimately divorce him. She began to doubt Plaintiff's explanations that he was being stalled by Wells Fargo in his quest for information about the mortgage loan.  Plaintiff lost the trust that his loved ones placed on him as the provider and protector of the family.

77.     Plaintiff has endured not only the financial hardship caused by Wells Fargo's conduct, but also an enormous emotional strain on himself and his marriage. Plaintiff, whose native tongue is Spanish, has found it extremely difficult to explain to others his circumstances in order to obtain assistance. He has felt extremely guilty toward his then-wife, and other family members, that he could not resolve the issues of the mortgage loan, that he failed to secure a discharge for bankruptcy and that he has remained in the same financial quagmire years after he started the process of filing for bankruptcy.

78.     At all times relevant, Wells Fargo continued to report Plaintiff's mortgage account as late or delinquent to the credit bureaus.

79.     As a result of what he has experienced with Wells Fargo, Plaintiff has experienced extreme emotional distress, including anxiety and depression which manifested itself into various physical conditions including recurring pain in his head, back and stomach. Plaintiff experienced loss of sleep, loss of appetite, irritability, and a tendency to retreat, rather than to enjoy interaction with others. He has felt enormous anger alongside with despair based on the number of times that Wells Fargo told him that it will address his concerns, only to also be told that the Loan was being escalated and his home may be lost to foreclosure. Plaintiff has felt that

BARRAZA LAW PLLC
10728 16TH AVE SW SEATTLE WA 98146
206-933-7861 phone 206-933-7863 fax

no one understood or cared about his plight and despite his best effort to pay his debts and to regain his financial footings, he has failed.

### III.   CAUSES OF ACTION

**CLAIM ONE: BREACH OF CONTRACT**

80.    Plaintiff repeats, realleges and incorporate by reference to the foregoing paragraphs.

81.    Wells Fargo is subject to the terms of the loan contract as well as the terms of the court's order confirming Plaintiff's Chapter 13 Plan. While Plaintiff timely made all payments as required under the promissory note, the deed of trust, and the court order confirming the Plan, Wells Fargo breached the agreements by failing to properly credit the payments made by Plaintiff under the Plan as required by the loan documents and court order.  Specifically, paragraph 3 of the Deed of Trust requires Wells Fargo to apply each payment made by the Plaintiff in a specific order, first to prepayment charges, to last, to pay late charges due under the Secured Notes (Exhibit A).

82.    Wells Fargo admitted that it did not properly apply all payments made by the Plaintiff as per the terms of the Promissory Note and Deed of Trust. Plaintiff's own expert, Jay Patterson, has proved that Wells Fargo misapplied post-petition payments to escrow which caused a large escrow balance that otherwise would not have existed. Moreover, Wells Fargo conducted numerous escrow analyses based upon its own misapplications and in the process, caused additional errors. Most importantly, Wells Fargo incorrectly arrived at the overpayment of $12,953.72 which it sent to the Chapter 13 Trustee, then determined that the payments made by Plaintiff were inadequate.

83.    In addition to failure to apply Plaintiff's payments to the right account, Wells Fargo also diverted payments made by Plaintiff to its own "unapplied funds account" while taxing Plaintiff for accrued interest, late fees and penalties, and expenses relating to default and foreclosure.

BARRAZA LAW PLLC
10728 16TH AVE SW SEATTLE WA 98146
206-933-7861 phone 206-933-7863 fax

84.     The court's Order of Confirmation issued within the Chapter 13 Plan is effectively a new contract between the debtor and his creditor. The terms of the Order is an agreed-upon contract between the parties and a judicial order. While Plaintiff had the obligation to make all payments as required under the bankruptcy court's order, Well Fargo had the concomitant obligation to apply these payments in an accurate and timely manner to lessen the amount Plaintiff owes on the Loan, which it failed to do.

85.     Wells Fargo's breach of the loan agreement and the bankruptcy court order caused Plaintiff's Plan to blow up and denied the benefit of reorganization. Wells Fargo's breach caused Plaintiff to lose both of his commercial vehicles and remain liable for the deficiency of $13,025.08. Wells Fargo's breach caused the Plaintiff's to be delinquent in the amount of $15,663.12 and to incur additional interests on the amount of the due and owing on the loan on a rolling basis. But for Wells Fargo's breach of contract, Plaintiff would not have to pay for an attorney and a mortgage loan expert to determine the status of his loan. Plaintiff has suffered loss of time and the aggregate of Plaintiff's ongoing losses caused by Wells Fargo's breach of contract is well in excess of $100,000.00.

**CLAIM TWO: VIOLATION OF 11 U.S.C. 524(i)**

84.     Plaintiff repeats, realleges and incorporate by reference to the foregoing paragraphs.

85.     Section 11 U.S.C. 524(i) provides, The willful failure of a creditor to credit payments received under a plan confirmed under this title, unless the order confirming the plan is revoked, the plan is in default, or the creditor has not received payments required to be made under the plan in the manner required by the plan (including crediting the amounts required under the plan), shall constitute a violation of an injunction under subsection (a)(2) if the act of the creditor to collect and failure to credit payments in the manner required by the plan caused material injury to the debtor.

86.     Defendant Wells Fargo has readily admitted that it failed to credit payments made by the Plaintiff under a plan confirmed by the bankruptcy court in his Chapter 13. The plan was

BARRAZA LAW PLLC
10728 16TH AVE SW SEATTLE WA 98146
206-933-7861 phone 206-933-7863 fax

neither revoked or in default, and Wells Fargo did receive a total of 75 payments. Thus, Wells Fargo violated 11 U.S.C §524(i).

87.     As a result of Wells Fargo's violation of §524(i), Plaintiff's Chapter 13 Plan blew up and he was denied the benefit of reorganization. Wells Fargo's action caused Plaintiff to lose both of his commercial vehicles and to remain liable for the deficiency of $13,025.08. Wells Fargo's action caused the Plaintiff's to be delinquent in the amount of $15,663.12 and to incur additional interests on the amount of the due and owing on the loan on a rolling basis. But for Wells Fargo's action, Plaintiff would not have to pay for an attorney and a mortgage loan expert to determine the status of his loan. In addition to money, Plaintiff has lost so much time from which he could work and earn an income. Plaintiff's credit standing has also been adversely affected by Well Fargo's continued reporting of default and foreclosure since 2017. The aggregate of Plaintiff's losses is well in excess of $100,000.00, and the exact amount will be proven at trial.

## CLAIM THREE: VIOLATION OF WASHINGTON CONSUMER PROTECTION ACT

88.     Plaintiff repeats and realleges and  incorporate  by  reference  the  foregoing paragraphs.

89.     To prove a cause of action under Washington's Consumer Protection Act ("CPA"), Plaintiff must prove five separate elements: (1) [an] unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; and (5) causation.

90.     Wells Fargo is a financial conglomerate whose business is to lend monies for mortgage loan, as well as servicing consumer mortgage loans all over the country.  Therefore, Well Fargo's business activities as a lender and servicer take place in commerce. Wells Fargo has readily admitted to the mishandling of Plaintiff's mortgage account, an act, which by definition, is unfair, especially as it occurred during the period of time when he was under a Chapter 13 bankruptcy plan. Wells Fargo's handling of consumer mortgage accounts impacts an important public interest as consumers must depend on their lender or their servicer to account

BARRAZA LAW PLLC
10728 16TH AVE SW SEATTLE WA 98146
206-933-7861 phone 206-933-7863 fax

for the payments they make toward what can be the largest investment in their life. Wells Fargo's conduct of accounting of mortgage payments made by a consumer, as demonstrated in this case, can mean the difference between the consumer keeping or losing his home to foreclosure.

91.     The unfair or deceptive aspect of the WACPA is determined on a case-by-case basis. Neither intent nor actual deception must be proven for an act or practice to be deemed unfair or deceptive. Instead, the court asks the question of whether the defendant's conduct has the capacity to deceive as substantial portion of the public. Given the terms of settlement agreement between Wells Fargo and the U.S. bankruptcy trustee in the State of Maryland, it is undeniable that the bank's conduct not only has the capacity to deceive but has in fact deceived a substantial portion of the public.

92.     Wells Fargo's conduct of misapplying Plaintiff's payments is particularly egregious when considered alongside with its continued delay and active obfuscation in response to Plaintiff's inquiry about the status of his loan. The sheer number of times that Wells Fargo had postponed its response to the Plaintiff's inquiry proves that Wells Fargo's conduct was intentional. Wells Fargo's conduct is not just unfair, it is also deceptive in that the defendant keeps reassuring Plaintiff that it would respond to his inquiries, while simultaneously declaring his account to be in default and making attempt to foreclose upon his property.

93.     The injury that resulted from Wells Fargo's conduct include loss of opportunity, encompassing the opportunity to receive a discharge from the bankruptcy court. Wells Fargo's violation of the CPA caused Plaintiff to lose not one, but both of his commercial vehicles, and suffer a deficiency for which he is still liable. Wells Fargo caused an arrears in his account in the amount of $15,663.12, and thousands more in interests which continue to accrue on the faulty balance Wells Fargo claims Plaintiff owes. Wells Fargo's conduct caused Plaintiff to suffer the consequences flowing from the Loan being improperly deemed delinquent, which include but not limited to accrued interests, late fees and penalties and expenses relating to in default and foreclosure. Wells Fargo's conduct caused Plaintiff to lose valuable time that he could use to earn an income as well as resources he has spent to get to the bottom of his mortgage account.

BARRAZA LAW PLLC
10728 16TH AVE SW SEATTLE WA 98146
206-933-7861 phone 206-933-7863 fax

Plaintiff has incurred fees paid to attorneys and experts who assisted him in analyzing what Wells Fargo has done. Wells Fargo's conduct also caused Plaintiff's credit rating to be diminished, marking it much more expensive, if not impossible for him to obtain credit. The Property, in particular, has been tainted by Wells Fargo's transmission and recording of foreclosure documents.

**CLAIM FOUR: NEGLIGENT MISREPRESENTATION**

94.    Plaintiff repeats and realleges and  incorporate  by  reference  the  foregoing paragraphs.

95.    The tort of negligent misrepresentation occurs when the defendant, in the course of business, profession, employment, or a transaction in which the defendant has a pecuniary interest, negligently supplies false information for the guidance of others in their business transactions, and the plaintiff justifiably relies on such information to his detriment.

96.    Wells Fargo committed negligent misrepresentation against Plaintiff because it is in the business of mortgage lending and loan servicing, upon whom the consumers look to for information about their mortgage account and to make sufficient payments to keep their home and ultimately own it free and clear of any encumbrances. Wells Fargo's compensation for lending and servicing mortgage loans comes directly from payments made by the consumers towards their loans. Yet, Wells Fargo negligently supplied false or incorrect information to the bankruptcy trustee as well as to the Plaintiff, intending for these parties to rely upon the information it provides.

97.    Wells Fargo knew or should have known that Plaintiff made every payment that was due in a timely manner and the account was never delinquent during the five years of the Chapter 13 bankruptcy and beyond. Yet, it incorrectly applied Plaintiff's payment to the escrow account, deemed the mortgage account to be delinquent, and computed interests and other fees based on this self-imposed delinquent amount. Wells Fargo was negligent in its misapplication and miscalculation of the balance due and owing every month, as well as the principal balance, and its failure to respond to the Plaintiff's repeated inquiry to correct its errors. Plaintiff had no

COMPLAINT - 16

option but to rely upon Wells Fargo's acts and omissions as there was no other entity or person that he could turn to. It was also foreseeable to Wells Fargo that the errors would destroy not only the Chapter 13 bankruptcy case, but also affect the mortgage loan status adversely.  It was foreseeable to Wells Fargo that left uncorrected, the errors made by Wells Fargo would cause monetary and other damages to the Plaintiff, including the permanent loss of his homestead.

98.     The injury that resulted from Wells Fargo's negligent misrepresentation include loss of opportunity, encompassing the opportunity to receive a discharge from the bankruptcy court. Wells Fargo's violation of the CPA caused Plaintiff to lose not one, but both of his commercial vehicles, and suffer a deficiency for which he is still liable. Wells Fargo caused an arrears in his account in the amount of $15,663.12, and thousands more in interests which continue to accrue on the faulty balance Wells Fargo claims Plaintiff owes. Wells Fargo's negligent misrepresentation caused Plaintiff to suffer the consequences flowing from the Loan being improperly deemed delinquent, which include but not limited to accrued interests, late fees and penalties and expenses relating to in default and foreclosure. Wells Fargo's negligent misrepresentation caused Plaintiff to lose valuable time that he could use to earn an income as well as resources he has spent to get to the bottom of his mortgage account.  Plaintiff has incurred fees paid to attorneys and experts who assisted him in analyzing what Wells Fargo has done. Wells Fargo's conduct also caused Plaintiff's credit rating to be diminished, marking it much more expensive, if not impossible for him to obtain credit. The Property, in particular, has been tainted by Wells Fargo's transmission and recording of foreclosure documents.

**CLAIM FIVE: NEGLIGENCE**

99.     Plaintiffs repeat and reallege and incorporate by reference to the foregoing paragraphs.

100.     At common law, every individual owes a duty of reasonable care to refrain from causing foreseeable harm in his interactions with others. Wells Fargo owes Plaintiff a duty of care not to mishandle the payments he made pursuant to the Confirmed Chapter 13 Bankruptcy Plan, which it admitted to breaching. Furthermore, Wells Fargo has a duty to promptly respond

COMPLAINT - 17

BARRAZA LAW PLLC
10728 16TH AVE SW Seattle WA 98146
206-933-7861 phone 206-933-7863 fax

to Plaintiff's inquiries concerning the status of his payments and the status of his mortgage loan, and to correct any errors made. By avoiding Plaintiff's inquiry, and delaying the correction of its own accounting mistakes, Wells Fargo breached its duty of care toward Plaintiff.  It was foreseeable to Wells Fargo that not only its accounting errors would harm Plaintiff, its delay in investigating and correcting the errors have further exacerbated the harm suffered by the Plaintiff.

101.     But for Wells Fargo's negligence, Plaintiff's Chapter 13 Plan would not have blown up and denied him the benefit of reorganization. The injury that resulted from Wells Fargo's conduct include loss of opportunity, encompassing the opportunity to receive a discharge from the bankruptcy court. Wells Fargo's negligence caused Plaintiff to lose not one, but both of his commercial vehicles, and suffer a deficiency for which he is still liable. Wells Fargo caused an arrears in his account in the amount of $15,663.12, and thousands more in interests which continue to accrue on the faulty balance Wells Fargo claims Plaintiff owes. Wells Fargo's negligence caused Plaintiff to suffer the consequences flowing from the Loan being improperly deemed delinquent, which include but not limited to accrued interests, late fees and penalties and expenses relating to in default and foreclosure. Wells Fargo's negligence caused Plaintiff to lose valuable time that he could use to earn an income as well as resources he has spent to get to the bottom of his mortgage account.  Plaintiff has incurred fees paid to attorneys and experts who assisted him in analyzing what Wells Fargo has done. Wells Fargo's conduct also caused Plaintiff's credit rating to be diminished, making it much more expensive, if not impossible for him to obtain credit. The Property, in particular, has been tainted by Wells Fargo's transmission and recording of foreclosure documents.

**CLAIM SIX: CONVERSION**

102.     Plaintiffs repeat and reallege and incorporate by reference to the foregoing paragraphs.

103.     Conversion is the unjustified, willful interference with a chattel which deprives a person entitled thereto the right of possession. Wrongful intend is not an element of

BARRAZA LAW PLLC
10728 16TH AVE SW Seattle WA 98146
206-933-7861 phone 206-933-7863 fax

conversion, and good faith is not a defense. Therefore, neither good nor bad faith, neither care nor negligence, neither knowledge nor ignorance, are the gist of the action in conversion. Money is a proper subject of conversion so long as it is capable of being identified. In this case, Wells Fargo admitted to taking Plaintiff's identifiable payments and misapplying them to the escrow account. But Wells Fargo also took some of Plaintiff's payments and did not apply them at all. One example of identified funds that was converted by Wells Fargo is on March 29, 2018, Wells Fargo served Plaintiff Flores with a statutory Notice of Pre-Foreclosure Options, as well as informing him of $222.72 being held in an "unapplied account." Wells Fargo's conversion of Plaintiff's monies was improper and gave rise to liability for which Plaintiff can recover fully.

104.    As a result of Wells Fargo's conversion of Plaintiff's monies, Plaintiff's Chapter 13 Plan blew up and he was denied the benefit of reorganization. The injury that resulted from Wells Fargo's conversion include loss of opportunity, encompassing the opportunity to receive a discharge from the bankruptcy court. Wells Fargo's conversion caused Plaintiff to lose not one, but both of his commercial vehicles, and suffer a deficiency for which he is still liable. Wells Fargo caused an arrears in his account in the amount of $15,663.12, and thousands more in interests which continue to accrue on the faulty balance Wells Fargo claims Plaintiff owes. Wells Fargo's conversion caused Plaintiff to suffer the consequences flowing from the Loan being improperly deemed delinquent, which include but not limited to accrued interests, late fees and penalties and expenses relating to in default and foreclosure. Wells Fargo's conversion caused Plaintiff to lose valuable time that he could use to earn an income as well as resources he has spent to get to the bottom of his mortgage account. Plaintiff has incurred fees paid to attorneys and experts who assisted him in analyzing what Wells Fargo has done. Wells Fargo's conduct also caused Plaintiff's credit rating to be diminished, marking it much more expensive, if not impossible for him to obtain credit. The Property, in particular, has been tainted by Wells Fargo's transmission and recording of foreclosure documents.

BARRAZA LAW PLLC
10728 16TH AVE SW SEATTLE WA 98146
206-933-7861 phone 206-933-7863 fax

1      **CLAIM SEVEN: TORT OF OUTRAGE**

2      105.   Plaintiffs repeat and reallege and incorporate by reference to the foregoing

3  paragraphs.

4      106.   To constitute outrage, the complained-of conduct must be so outrageous in

5  character, and so extreme in degree, as to go beyond all possible bounds of decency, and to

6  be regarded as atrocious, and utterly intolerable in a civilized community. The tort of outrage

7  does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other

8  trivialities.

9      107.   Wells Fargo's mishandling of Plaintiff's payments, which occurred after he

10  made all payments under the Confirmed Plan, caused his bankruptcy case to blow up. He lost

11  his vehicles which were necessary for him to work and earned a living. Although he started

12  asking questions early, Wells Fargo kept dragging things out instead of resolving the issues

13  he raised to them. Nearly thirty times over the course of two years, Wells Fargo kept telling

14  Plaintiff that it would respond to his inquiries while declaring the Loan to be in default and

15  threatening him with foreclosure. Plaintiff did take Wells Fargo at its word and waited in

16  earnest for resolution each time the bank made him a promise. By contrast, Wells Fargo did

17  not bother investigating into the concerns raised, but unilaterally and arbitrarily dealt with

18  Plaintiff's payments; making refunds of payments while declaring the account delinquent,

19  failing to apply payments but to park Plaintiff's monies into an "unapplied account" allowing

20  for interests to accrue unchecked while sending out threats of foreclosure.

21      108.   Wells Fargo's conduct, in its totality, is a type of financial terrorism which

22  went beyond all possible bounds of decency as to be utterly intolerable in a civilized

23  community. Wells Fargo in fact knew about the "systemic problem" inherent in its software

24  program used to analyze escrow accounts in 2013 and agreed to provide remedies to

25  thousands affected borrowers in 2015. Yet, it allowed for the systemic problem to continue

26  affecting Plaintiff's loan in 2017. What more, Wells Fargo used its systemic error to

27  accelerate Plaintiff's Loan and to pursue foreclosure against Plaintiff's property.

COMPLAINT - 20

109.    In this district, the Court has held that the servicer committed the tort of outrage when it "adopted a strained and unprincipled analysis of the deed of trust to justify the imposition of enormous charges directly onto the borrower's mortgage statements, and the servicer reasonably should have known that the charges would have caused immense emotional distress." *Lucero v. Cenlar FSB*, 2016 U.S. Dist. LEXIS 10430 (W.D. Wash. Jan28, 2016).

110.    Here, Wells Fargo knew of the problem inherent in its system relating to escrow analysis and application of mortgage payments of thousands of borrowers and promised to clean up its act. Yet, Wells Fargo allowed the problem to infect Plaintiff's loan, then falsely represented that Plaintiff's loan was in default, and threatened foreclosure of his property. When Plaintiff hired an attorney to assist him to inquire about the status of his loan, Wells Fargo delayed, delayed, and delayed, causing Plaintiff to incur a multitude of damages ranging from being denied the bankruptcy discharge, losing his work vehicles and being liable for the deficiency from their repossession, incurring interests on an inflated loan amount as well as fees and costs relating to the default.

11.    One can imagine the enormous frustration that Plaintiff was experiencing while trying to obtain information from Wells Fargo for more than two years, but that would only be one source of suffering. Plaintiff also experienced anger, anxiety, shame, and anguish.  Wells Fargo did not just throw Plaintiff's bankruptcy case into chaos, it also helped to end his marriage. One only has to look at the sheer number of promises made by Wells Fargo, during the years of 2018 and 2019, that it would respond to Plaintiff's inquiries, and the contradiction caused by Wells Fargo's actions of determining the account to be in default, inflating the amount due and owing on the account, and taking steps to foreclosure, to feel the strongest feeling of outrage and extreme repugnancy.  As observed by the *Lucero* court: "Regardless of whether [the bank] was demanding immediate payment or was simply threatening to collect them in the future, the message was clear: continue this litigation and we will take your home. Such conduct is beyond the bounds of decency and is utter intolerable." Here, Wells Fargo never had the intent to correct

its own errors. Wells Fargo was simply placating Plaintiff, albeit in the most transparent manner, while using the delay to accelerate the Loan and to work up the foreclosure. Wells Fargo's conduct was beyond the bounds of decency and utterly intolerable by the community we live in.

## V.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that judgment be entered against Defendant Wells Fargo for the following:

1)   For declaratory relief that Wells Fargo's conduct violated 11 U.S.C. 524(i),

2)   For declaratory relief that Wells Fargo conduct violated the Washington Consumer Protection Act;

3)   For judgment that Wells Fargo committed the torts of Negligence, Negligence Misrepresentation, Conversion and Outrage;

4)   For judgment that Wells Fargo breached the loan documents and the bankruptcy court's order confirming the Chapter 13 Plan;

5)   For all resulting damages from Wells Fargo breach of contract and violation of statutes and tort laws; including attorney fees and costs under the Deed of Trust;

6)   For all remedies provided under the WA CPA, RCW 19.86.090, including treble damages and attorney fees and costs;

7)   Plaintiff reserves his request for injunctive relief pursuant to RCW 19.86.090.

8)   For pre-judgment interest on the above amounts as authorized by law;

9)   For other relief as the Court deems just and equitable;

10)   For leave to amend this complaint as needed and as required; and

Respectfully submitted this 4th day of January.

BARRAZA LAW, PLLC

*/s/ V. Omar Barraza*
V. Omar Barraza, WSBA #43589
10728 16th Avenue SW
Seattle, Washington 98146
omar@barrazalaw.com
Tel.: (206) 933-7861
Fax.: (206) 933-7863

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

HENRY & DEGRAAFF, PS

*/s/ Christina L. Henry*
Christina L. Henry, WSBA #31273
787 Maynard Avenue South
Seattle, Washington 98104
chenry@hdm-legal.com
Tel.: (206) 330-0595
Fax: (206) 400-7609

BARRAZA LAW PLLC
10728 16TH AVE SW SEATTLE WA 98146
206-933-7861 phone 206-933-7863 fax