The Honorable Robert S. Lasnik

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| Julian Flores aka Julian Flores Sanchez, | No. 2:21-cv-00006-RSL |
| Plaintiff, | **AMENDED COMPLAINT** |
| v. | DEMAND FOR JURY TRIAL |
| Wells Fargo Bank, N.A., | |
| Defendant. | |

COMES NOW Plaintiff, Julian Flores aka Julian Flores Sanchez, by and through counsel and brings this action for damages caused by Defendant Wells Fargo's mishandling of payments made in Plaintiff's Chapter 13 bankruptcy plans which constitutes breach of contract, violations of 11 U.S.C. 524 (i), the Washington Consumer Protection Act, RCW 19.86, *et seq.*, and tort laws, and states the following allegations:

## I.   JURISDICTION AND VENUE

1.      Defendant's conduct violates the bankruptcy discharge injunction in direct violation of 11 U.S.C. 524(i).

2.      Defendant's conduct also violates the Washington Consumer Protection Act, RCW 19.86, *et seq.*, and tort laws.

3.      Based on the below factual allegations, this Court has diversity jurisdiction pursuant to 28 U.S. Code § 1332 because every party in this lawsuit is a citizen of a different state, and the amount in dispute exceeds $75,000.

AMENDED COMPLAINT - 1

**BARRAZA LAW PLLC**
10728 16TH AVE SW SEATTLE WA 98146
206-933-7861 phone 206-933-7863 fax

4.     The Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (general federal question), and supplemental jurisdiction exists for state law claims pursuant to 28 U.S.C. § 1367(a).

5.     Declaratory relief is available pursuant to 28 U.S.C. §§2201 and 2202.

6.     Venue is proper in this District under 28 U.S.C. §1391(b) because the Defendant conducts affairs and transacts business in this District, the unlawful acts giving rise to this complaint occurred in this District, and the Plaintiff resides in this District.

## II.     PARTIES

7.     Plaintiff Flores owns and lives at the real property located at 30845 10th Ave SW, Federal Way, WA 98023-4501 ("the Property"), which was pledged as collateral for the mortgage loan account *****0083 ("the Loan").

8.     Defendant Wells Fargo Bank, N.A. ("Wells Fargo") is a national bank and loan servicer of the Loan until approximately July 31, 2020.  Wells Fargo conducts business within the State of Washington. In June 29, 2020, loan servicing transferred to Specialized Loan Servicing, but the purported beneficiary remains as Wells Fargo.

9.     Wells Fargo also claims to be the beneficiary of the Loan thorough its ownership of what was formally known as Wachovia Mortgage, a Division of Wells Fargo Bank, N.A., and formerly known as Wachovia Mortgage, FSB, formerly known as World Savings Bank, FSB.

## III.     FACTUAL ALLEGATIONS

10.     Plaintiff purchased the Property on or about May 27, 2004 and has been using it as his homestead.[1] He obtained a refinancing loan, the Loan, from World Savings Bank, FSB which is secured by the Property (See King County, Washington Instrument 20060714000913). A copy of the note and deed of trust is attached hereto as Exhibit A.

---

[1] Mr. Flores married on August 20, 2017 but the property is separate property because he was single when he purchased his home and when he filed for bankruptcy.

BARRAZA LAW PLLC
10728 16TH AVE SW SEATTLE WA 98146
206-933-7861 phone 206-933-7863 fax

11.     As a result of the economic crisis, Mr. Flores defaulted on his mortgage loans for the subject property as well as three other real properties he owned. Defendant Wells Fargo claims to be owning or holding the Loan.

12.     As a result of needing reorganization, Plaintiff filed for Chapter 13 bankruptcy protection on September 11, 2011, in the Western District of Washington Bankruptcy Court, under case 11-20512. The bankruptcy schedules list all three real properties: the Property, another located at 30414 1st Place South, Federal Way, WA 98003 (which he co-owned with two relatives), and a third property located at 1410 South 282nd Pl, Federal Way, WA 98003 (which he co-owned with one relative).

13.     Plaintiff's Confirmed Bankruptcy Plan provided Plaintiff with specific relief, allowing him to surrender the property located at 1410 S 282nd Place; to surrender 30414 1st Place South and be released from the indebtedness of $44,000 which was the second mortgage on the property.  Most importantly, Plaintiff would have been able to cure any arrears and reinstate the Loan on the Property as his homestead. *See* Exhibit B.

14.     Over the course of the Chapter 13 bankruptcy, Plaintiff made 75 timely mortgage payments to Wells Fargo through the Chapter 13 Trustee totaling $140,150. The bankruptcy never completed, and it was ultimately dismissed on December 1, 2017 and closed on March 7, 2018 purportedly because the plan extended beyond 60 months without completion. Thus, Plaintiff and his co-borrowers had to sell the 30414 1st Avenue South Property at a loss and pay the $44,000 indebtedness in full.

15.     During the pendency of the bankruptcy case, the Chapter 13 Trustee filed a "Notice of Final Cure Payment" on May 10, 2017, obligating Wells Fargo to confirm whether it considered the underlying default have been cured. *See* Exhibit C. On May 31, 2017, Wells Fargo advised in writing that Plaintiff had cured the pre-petition mortgage default through the bankruptcy plan payments.

16.     However, Wells Fargo claimed that Plaintiff owed eight *post-petition* mortgage payments, or $15,663.12 for the period October 15, 2016 through May 15, 2017

AMENDED COMPLAINT - 3

**BARRAZA LAW PLLC**
10728 16TH AVE SW SEATTLE WA 98146
206-933-7861 phone 206-933-7863 fax

despite the fact Plaintiff timely tendered all monies owed under his confirmed bankruptcy plan which included all post-petition mortgage payments, and the account was in fact current. *See* the Bankruptcy Docket notation on May 31, 2017, Exhibit D.

17.    Wells Fargo qualified its Response to the Notice of Final Cure by stating that the following: "*Wells Fargo is in the process of reconciling the account and will amend the response to Notice of Final Cure if necessary."

18.    Wells Fargo subsequently filed an amended proof of claim on July 14, 2017, relating back to the 2011 account history but it failed to provide any meaningful reason for the amendment and aside confirming that the payment monthly payment included an escrow amount of $181.08 and a change in the arrearage from $4,631.77 to $4,204.31. Additionally, Wells Fargo never amended their Response to the Notice of Cure.

19.    Wells Fargo never reconciled the account until the debtor complained through his Notices of Error and Requests for Information and even then, Wells Fargo took more than two years to complete the reconciliation after the bankruptcy was dismissed.

20.    As a result of Wells Fargo's failure to accurately record and report all payments made by the Plaintiff, failure to complete its reconciliation of his account, or notify the borrower that a reconciliation was unnecessary, Mr. Flores was not on notice that there that there was anything he could do to mitigate his damages so that he could obtain a discharge.

21.    The failure to obtain a discharge resulted in the forgoing losses, as well as the repossession of two vehicles that Plaintiff used for work, leaving him with a deficiency of $13,025.08, for which he remains liable to this day. See Exhibit E.

22.    Based on Wells Fargo's calculation, Plaintiff had to pay the alleged arrears on the Loan in the amount of $15,663.12.  As a result of Wells Fargo's misapplication of Plaintiff's payment and therefore miscalculation of the amount due and owing on his mortgage loan, Plaintiff was denied the financial fresh start he so desperately needed and was entitled to obtain and thereafter his issues with his mortgage loan only continued.

BARRAZA LAW PLLC
10728 16TH AVE SW SEATTLE WA 98146
206-933-7861 phone 206-933-7863 fax

23.     Because English is Plaintiff's second language, he never understood of any of Wells Fargo's communications which were sent to him and had extreme difficulty obtaining help to communicate with Wells Fargo about the Loan. Plaintiff finally retained the undersigned, a bilingual lawyer, and on or about January 12, 2018, counsel notified Wells Fargo that it now represented Plaintiff, requesting for all further communications be directed to Barraza Law, PLLC.

24.     Around this period of time, Wells Fargo had determined the Loan to be seriously delinquent and in reliance on their communications regarding his mortgage loan delinquency, the Plaintiff retained a Spanish speaking attorney to assist him in filing a loan modification application to save his home from foreclosure.

25.     In February 22, 2018, in response to anWells Fargo acknowledged receipt of Plaintiff's written "inquiry," and responding that he can expect a reply by March 7, 2018.

26.     On March 6, 2018, Wells Fargo acknowledged receipt of Plaintiff's inquiry extending the response date to March 20, 2018.

27.     On March 12, 2018, Wells Fargo inexplicably sent correspondence to borrower's bankruptcy counsel, instead of Barraza Law, announcing, "**we are not moving forward with a review of the mortgage for assistance. We based our decision on a review of the mortgage history, the recent information you provided us, and the current circumstances surrounding the mortgage**." Wells Fargo did not explain what it meant by "the current circumstances surrounding the mortgage."

28.     The denial letter did not acknowledge Wells Fargo's continued failure to reconcile his mortgage loan as promised in the filed Response to Final Cure in Plaintiff's bankruptcy case, andcase and made no effort to explain how a borrower who made 75 on-time monthly payments to the Chapter 13 Trustee in his bankruptcy case, who in turn paid all known post-petition mortgage payments and obligations, and pre-petition arrears in accord with his confirmed chapter 13 conduit plan.

**BARRAZA LAW PLLC**
10728 16TH AVE SW SEATTLE WA 98146
206-933-7861 phone 206-933-7863 fax

29.    Despite these timely payments and continued monthly payments after his bankruptcy dismissed, Plaintiff did not even qualify for a "review" of his loan modification application.

30.    On March 19, 2018, Wells Fargo again acknowledged Plaintiff's original inquiry and extended the response date to April 2, 2018.

31.    On March 27, 2018, Wells Fargo acknowledged receipt of inquiry from Plaintiff's attorney, and reiterated that it would not consider a payment assistance review because it determined that there had not been a "large enough change since your last review to consider a new review." There was never any "last review" made by Wells Fargo of Plaintiff's request for mortgage assistance. *See* Exhibit F.

32.    On March 29, 2018, Wells Fargo served Mr. Flores with a statutory Notice of Pre-Foreclosure Options. That same day, it also informed him that approximately $222.72 of his payment had been placed in "unapplied account funds."

33.    The Notice of Pre-Foreclosure Options caused Plaintiff to panic. He was angry, confused, and feeling despair that he would end up losing his house even though Wells Fargo was the one that screwed up his mortgage account entirely. During this time, Plaintiff never stopped making payments toward the Loan.

34.    Wells Fargo notified Plaintiff that the Loan was accelerated as of April 2, 2018.

35.    April 3, 2018, Wells Fargo rejected a mortgage payment made earlier by the Plaintiff.

36.    On April 8, 2018, Wells Fargo notified the Plaintiff directly, with full knowledge that he is represented by counsel, and informed him of a delinquent amount of $13,424.60 as of April 2, 2018.

37.    On April 12, 2018, Plaintiff, through his counsel, served Wells Fargo with a statutory Request for Information ("RFI"), pursuant to the Real Estate Procedure Act, asking Wells Fargo to explain the basis for the delinquency given the fact that payments were made timely and completely through the bankruptcy plan. Wells Fargo acknowledged the RFI by

BARRAZA LAW PLLC
10728 16TH AVE SW SEATTLE WA 98146
206-933-7861 phone 206-933-7863 fax

letter dated April 16, 2018 and informed Plaintiff that a response to his inquiry would be provided by April 30, 2018.

38.    On April 18, 2018, Plaintiff paid the amount demanded by Wells Fargo to reinstate the loan in order to save his home from foreclosure.

39.    On April 19, 2018, Plaintiff, through his counsel, served Wells Fargo with a statutory notice of error ("NOE") informing the bank specifically of seven separate errors it made, including (1) communicating with a represented borrower; (2) erroneously returning $12,953.72 to the bankruptcy trustee in Plaintiff's bankruptcy case on or around February 5, 2016; (3) failing to file an amended response to Notice of Final Cure after account reconciliation in Plaintiff's bankruptcy case; (4) failing to process Plaintiff's 2018 loan modification application; (5) failing to apply an extra overpayment of $233.23 to principal for the December 2017 payment; (6) failing to correctly apply payments from Plaintiff's bankruptcy trustee; and (7) filing an erroneous or incomplete Response to Final Cure with the bankruptcy court.

40.    On April 30, 2018, Wells Fargo informed Plaintiff it would respond to his "inquiry" without specifying whether it meant the RFI, the NOE, or any other inquiry made by him previously, by May 9, 2018.

41.    On May 4, 2018, Wells Fargo informed Plaintiff that he could contact Justin Hill, a Home Preservation Specialist to assist him navigate the "mortgage assistance process." Wells Fargo's gesture proved meaningless in that Plaintiff had to pay the amount demanded by the bank to stave off the foreclosure.

42.    On May 9, 2018, Wells Fargo informed Plaintiff it would now respond to his "inquiry" by May 23, 2018.

43.    On May 17, 2018, Wells Fargo sent Plaintiff a letter with the subject line reading, "[u]pdate to the *inquiries* received about Julian Flores, account number ******0083" (emphasis added). The letter stated that Wells Fargo has "initiated a new review for possible payment options."

BARRAZA LAW PLLC
10728 16TH AVE SW SEATTLE WA 98146
206-933-7861 phone 206-933-7863 fax

44. On May 23, 2018, Wells Fargo sent Plaintiff a letter informing him it would respond to his "inquiries" by June 7, 2018.

45. On June 7, 2018 Wells Fargo sent Plaintiff a letter informing him it would respond to his "inquiries" by June 21, 2018.

46. On June 15, 2018, Wells Fargo sent Plaintiff a check for $1,732.79, as an "escrow refund" without any further explanations. Having been burned by which Plaintiff returned to Wells Fargo.

47. On June 21, 2018, Wells Fargo sent Plaintiff a letter informing him it would respond to his "inquiries" by July 6, 2018.

48. On July 6, 2018, Wells Fargo sent Plaintiff a letter informing him it would respond to his "inquiries" by July 20, 2018.

49. On July 20, 2018, Wells Fargo sent Plaintiff a letter informing him it would respond to his "inquiries" by August 3, 2018.

50. On August 3, 2018, Wells Fargo sent Plaintiff a letter informing him it would respond to his "inquiries" by August 17, 2018.

51. On August 17, 2018, Wells Fargo sent Plaintiff a letter informing him it would respond to his "inquiries" by August 31, 2018.

52. On August 31, 2018, Wells Fargo sent Plaintiff a letter informing him it would respond to his "inquiries" by September 17, 2018.

53. On September 17, 2018, Wells Fargo sent Plaintiff a letter informing him it would respond to his "inquiries" by October 1, 2018.

54. On October 1, 2018, Wells Fargo sent Plaintiff a letter informing him it would respond to his "inquiries" by October 16, 2018.

55. On October 16, 2018, Wells Fargo sent Plaintiff a letter informing him it would respond to his "inquiries" by October 30, 2018.

56. On October 17, 2018, Wells Fargo demanded for Plaintiff's counsel to verify if legal representation is still ongoing.

AMENDED COMPLAINT - 8

BARRAZA LAW PLLC
10728 16TH AVE SW SEATTLE WA 98146
206-933-7861 phone 206-933-7863 fax

57.     On October 30, 2018 Wells Fargo sent Plaintiff a letter informing him it would respond to his "inquiries" by November 14, 2018.

58.     On November 14, 2018 Wells Fargo sent Plaintiff a letter informing him it would respond to his "inquiries" by November 29, 2018.

59.     On November 29, 2018 Wells Fargo sent Plaintiff a letter informing him it would respond to his "inquiries" by December 13, 2018.

60.     On December 13, 2018 Wells Fargo sent Plaintiff a letter informing him it would respond to his "inquiries" by December 28, 2018.

61.     On December 28, 2018 Wells Fargo sent Plaintiff a letter informing him it would respond to his "inquiries" by January 11, 2019.

62.     On January 11, 2019 Wells Fargo sent Plaintiff a letter informing him it would respond to his "inquiries" by January 28, 2019.

63.     On January 28, 2019 Wells Fargo sent Plaintiff a letter informing him it would respond to his "inquiries" by February 11, 2019.

64.     On February 6, 2019, Wells Fargo demanded for Plaintiff's counsel to verify whether legal representation is still ongoing.

65.     On February 11, 2019 Wells Fargo sent Plaintiff a letter informing him it would respond to his "inquiries" by February 26, 2019.

66.     On February 22, 2019, Wells Fargo sent Plaintiff "a check in the amount of $13,195.11 per customer refund request." The check, number 7035529973 was dated February 21, 2019 in the amount of $13,195.11 and labeled "for misapplication reversal." Plaintiff in fact had not made any request for refund, but simply for Wells Fargo to fully account for all payments he had made toward the Loan.

67.     On February 26, 2019 Wells Fargo sent Plaintiff a letter informing him it would respond to his "inquiries" by March 12, 2019.

68.     On March 5, 2019, Wells Fargo sent a letter to Plaintiff entitled "Resolution to the inquiry we received from Julian Flores…" This particular correspondence admitted, for

AMENDED COMPLAINT - 9

the first time, that "[d]uring the bankruptcy there was a delay in the posting of payments." Wells Fargo stated further, "[s]ince recognizing this situation we have updated our system and ensured that the payments we have received match the terms of the bankruptcy plan. We apologize that our customer had to spend time addressing the matter." Since the bankruptcy did blow up and it had been in the rear-view mirror for more than two years, by this time, Wells Fargo's concession rang hollow.

69.     Wells Fargo's March 5, 2019 correspondence further admitted, "[d]ue to the delay in the payment posting, Julian Flores received corrected 1098 tax forms for 2013 and 2014. We understand that this may require changes to the tax returns that were previously filed." Wells Fargo's March 5, 2019 correspondence further indicated, "[o]n October 1, 2015, we moved Mr. Flores' account from Wachovia to Wells Fargo Home Mortgage's servicing system." Mr. Flores has or will incur fees and charges to hire a tax professional to analyze any tax implications of Wells Fargo's accounting failures and to prepare amended returns.

70.     Although Wells Fargo never explained fully what had happened, it appears that it was laboring under excess funds in Plaintiff's escrow account in the amount of $12,953.72, Wells Fargo sent the bankruptcy trustee the escrow refund check, dated December 21, 2015, number 7029747026 in the amount of $12,953.73. The bankruptcy trustee's ledger/records reflect the check was received on February 5, 2016. *See* Exhibit G.

71.     Wells Fargo's March 5, 2019 correspondence also stated, "[a]fter further review, a business decision was made to remediate funds in the amount of $13,195.11. Check number 7035529973 in the amount of $13,195.11 was sent payable to Julian Flores and sent via overnight FedEx tracking number 785645881083. Thank you for your patience *while we researched the account.*"

72.     On or about April 7, 2019, Plaintiff's counsel sent a letter to Wells Fargo informing Wells Fargo that Plaintiff intended to commence litigation against Wells Fargo

BARRAZA LAW PLLC
10728 16TH AVE SW SEATTLE WA 98146
206-933-7861 phone 206-933-7863 fax

because its actions deprived Mr. Flores of his bankruptcy discharge and damaged his financial status.

73.    On April 11, 2019, Wells Fargo responded that it received the inquiry and would respond by April 25, 2019.

74.    On April 25, 2019, Wells Fargo informed Plaintiff it would respond to his April 7, 2019 inquiry by May 9, 2019.

75.    On May 9, 2019, Wells Fargo informed Plaintiff that it would respond to his April 7, 2019 inquiry by May 23, 2019.

76.    On May 23, 2019, Wells Fargo informed Plaintiff that it would respond to his April 7, 2019 inquiry by June 7, 2019.

77.    On June 7, 2019, Wells Fargo informed Plaintiff that it would respond to his April 7, 2019 inquiry by June 14, 2019.

78.    On June 11, 2019, Wells Fargo sent Plaintiff another escrow refund check in the amount of $1,968.37.

79.    On June 14, 2019, Wells Fargo confirmed that Plaintiff could cash the $13,195.11 check without waiving his claims against Wells Fargo. On June 17, 2019, Plaintiff's counsel deposited the $13,195.11 check into the firm's trust account on behalf of the Plaintiff.

80.    Based on his own accounting and being prompted by Wells Fargo's admissions of error, Plaintiff hired nationally renowned mortgage expert Bernard Jay Patterson to research his mortgage account. Mr. Patterson found that Wells Fargo misapplied Plaintiff's post-petition payments to the escrow account which caused an overage in the escrow balance, and a deficiency in the mortgage account that otherwise would not have existed. Moreover, Mr. Patterson determined that Wells Fargo conducted numerous escrow analyses based upon its own misapplications and in the process, thereby causing additional errors, and allowing the alleged "default" to grow continuously. Most importantly, Wells Fargo's

BARRAZA LAW PLLC
10728 16TH AVE SW SEATTLE WA 98146
206-933-7861 phone 206-933-7863 fax

determination of the overpayment amount of $12,953.72 which it sent to the Chapter 13 Trustee, was incorrect.

81.     Mr. Patterson found if Wells Fargo had correctly applied payments during the five-years of bankruptcy, the account would not have been delinquent at all. In fact, Wells Fargo's failure to properly apply Plaintiff's payments in a correct and timely manner caused interest to accrue uncontrollably thereby hugely inflating the amount of the Loan over the course of several years.

82.     What Wells Fargo has done to Plaintiff is not an isolated incident but a part of Wells Fargo's well-documented pattern of mishandling of payments made by debtors in chapter 13 cases.  Evidence of this pattern is found in the Settlement between Wells Fargo and the U.S. Trustee's Office, *In re Ernestine C.J. Green*, U.S. Bankruptcy Court for the District of Maryland case number 11-33377-TJC. There, Wells Fargo identified thousands of accounts being affected with "systemic issues" relating to the program it used to analyze escrow accounts.  In the same Settlement Agreement, Wells Fargo committed to taking certain actions to remedy such "systemic issues."[2]

83.     By its own admission in its March 5, 2019 correspondence, Wells Fargo's systems failed to ensure the timely posting of the mortgage payments fundamental to the success of Mr. Flores's Chapter 13 Plan and to prevent ongoing defaults that led to initiation of foreclosure proceedings that were only stopped due to Flores' efforts at mitigation by paying the reinstatement amount Wells Fargo requested.

84.     The time that it has taken the Plaintiff to straighten things out with Wells Fargo went on for more than two years, during which time Wells Fargo promised to review Plaintiff's complaint and provide redress in 30 separate occasions. Being under a financial strain was not enough to break up the Plaintiff's marriage, but his inability to rein in the mortgage loan caused his wife to ultimately divorce him was a factor in the implosion of his marriage. She He began to doubt Plaintiff's explanations that he was being stalled by Wells

---

[2] https://www.justice.gov/ust/file/wells_fargo_settlements.pdf/download

**BARRAZA LAW PLLC**
10728 16TH AVE SW SEATTLE WA 98146
206-933-7861 phone 206-933-7863 fax

Fargo in his quest for information about the mortgage loan.  Plaintiff lost the trust that his loved ones placed on him as the provider and protector of the family.

85.     Plaintiff has endured not only the financial hardship caused by Wells Fargo's conduct, but also an enormous emotional strain on himself and his marriage. Plaintiff, whose native tongue is Spanish, has found it extremely difficult to explain to others his circumstances in order to obtain assistance. He has felt extremely guilty toward his then-wife, and other family members, that he could not resolve the issues of the mortgage loan, that he failed to secure a discharge for bankruptcy and that he has remained in the same financial quagmire years after he started the process of filing for bankruptcy.

86.     At all times relevant, Wells Fargo continued to report Plaintiff's mortgage account as late or delinquent to the credit bureaus.

87.     As a result of what he has experienced with Wells Fargo, Plaintiff has experienced extreme emotional distress, including anxiety and depression which manifested itself into various physical conditions including recurring pain in his head, back and stomach. Plaintiff experienced loss of sleep, loss of appetite, irritability, and a tendency to retreat, rather than to enjoy interaction with others. He has felt enormous anger alongside with despair based on the number of times that Wells Fargo told him that it will address his concerns, only to also be told that the Loan was being escalated and his home may be lost to foreclosure. Plaintiff has felt that no one understood or cared about his plight and despite his best effort to pay his debts and to regain his financial footings, he has failed.

## IV.     CAUSES OF ACTION

### A.     CLAIM ONE: BREACH OF CONTRACT

88.     Plaintiff repeats, realleges and incorporate by reference to the foregoing paragraphs.

89.     Plaintiff Flores is subject to the terms of the loan contract order confirming the Plaintiff's Chapter 13 Plan.

BARRAZA LAW PLLC
10728 16TH AVE SW SEATTLE WA 98146
206-933-7861 phone 206-933-7863 fax

90.     While Plaintiff timely made all payments as required under the promissory note, the deed of trust either on his own or through payments the chapter 13 trustee made on his behalf.

91.     Despite his payments, Wells Fargo breached the agreements by failing to properly credit the payments he made under the chapter 13 Plan as required by the loan documents and court order.  Specifically, paragraph 3 of the Deed of Trust requires Wells Fargo to apply each payment made by the Plaintiff in a specific order, first to prepayment charges, to last, to pay late charges due under the Secured Notes. *See* Exhibit A.

92.     Although Wells Fargo promised to reconcile the account, it only did so after the debtor hired counsel to investigate the alleged arrears. It was not until March 4, 2019, at the earliest, that that Wells Fargo finally provided a reconciliation of his loan and Flores learned that it did not properly apply all payments made by the Plaintiff as per the terms of the Promissory Note and Deed of Trust.

93.     Despite Wells Fargo's acknowledgment, Wells Fargo failed to articulate its servicing activities, errors, and purported corrections in any sort of comprehensible language. Utterly confused by Wells Fargo's accounting disaster, Plaintiff hired an expert accounting professional, Jay Patterson, to wade through a stack of accounting documents to understand the cascade of errors that caused his bankruptcy to founder and provoked his post-bankruptcy delinquency that was only resolved after he paid tens of thousands of dollars to cure and investigate a Wells Fargo-caused default.

94.     Moreover, Wells Fargo conducted numerous escrow analyses based upon its own misapplications and in the process, caused additional errors. Most importantly, Wells Fargo incorrectly arrived at the overpayment of $12,953.72 which it sent to the Chapter 13 Trustee, then determined that the payments made by Plaintiff were inadequate.

95.     In addition to failure to apply Plaintiff's payments to the right account, Wells Fargo also diverted payments made by Plaintiff to its own "unapplied funds account" while

BARRAZA LAW PLLC
10728 16TH AVE SW SEATTLE WA 98146
206-933-7861 phone 206-933-7863 fax

taxing Plaintiff for accrued interest, late fees and penalties, and expenses relating to default and foreclosure.

96.     The court's Order of Confirmation issued within the Chapter 13 Plan is effectively a new contract between the debtor and his creditor. The terms of the Order is an agreed-upon contract between the parties and a judicial order. While Plaintiff had the obligation to make all payments as required under the bankruptcy court's order, Well Fargo had the concomitant obligation to apply these payments in an accurate and timely manner to lessen the amount Plaintiff owes on the Loan, which it failed to do.

97.     Plaintiff was not aware until at least March 5, 2019, and arguably only later, upon his expert's completion of his investigation of the March 5, 2019 correspondence, the true nature and scope of Wells Fargo's nearly continuous breaches of contract.

98.     Wells Fargo's breach of the loan agreement and the bankruptcy court order caused Plaintiff's Plan to blow up and denied the benefit of reorganization. Wells Fargo's breach caused Plaintiff to lose both of his commercial vehicles and remain liable for the deficiency of $13,025.08. Wells Fargo's breach caused the Plaintiff's to be delinquent in the amount of $15,663.12 and to incur additional interests on the amount of the due and owing on the loan on a rolling basis. But for Wells Fargo's breach of contract, Plaintiff would not have to pay for an attorney and a mortgage loan expert to determine the status of his loan. Plaintiff has suffered loss of time and the aggregate of Plaintiff's ongoing losses caused by Wells Fargo's breach of contract is well in excess of $100,000.00.

### B.     CLAIM TWO: BREACH OF GOOD FAITH AND FAIR DEALING

99.     Plaintiff incorporates herein by reference as though fully set forth at length each and every preceding allegation and statement contained herein, inclusive, of the factual allegations.

100.     Wells Fargo breached the implied duty of good faith and fair dealing present in all contracts when it failed to complete a thorough reconciliation and review of the Plaintiff's loan account when it should have known they had made serious errors when they

AMENDED COMPLAINT - 15

showed a substantial delinquency that did not align with the chapter 13 Trustee's accounting of payments made to Wells Fargo on the Plaintiff's behalf. At the end of the Plaintiff's bankruptcy case, instead of doing a thorough review and reconciliation of the account as they claimed they would do in the Response to Notice of Final Cure, they just continued to claim the Plaintiff was delinquent on his mortgage loan by failing to properly apply payments the Plaintiff made in accordance with his note and deed of trust both during the bankruptcy and in the years thereafter.

101.    Wells Fargo had no reason not to perform, since it was obvious from a review of the history of payments since the filing of the Plaintiff's bankruptcy in 2011 that there was no reason why his loan would be delinquent and that any delinquency was due to an error on the part of Wells Fargo.

102.    Wells Fargo's refusal to accept payments was therefore in bad faith.

103.    After further review, it appears that no error actually existed in the loan modification and the revocation appears to be nothing more than an attempt to void the modification agreement by abusing the contractual language that allowed for the correction of errors. Plaintiff was not aware until at least March 5, 2019, and arguably much later, upon his expert's completion of his investigation of the March 5, 2019 correspondence, the true nature and scope of Wells Fargo's nearly continuous misrepresentations.

104.    Plaintiff is entitled to compensatory damages as a result of Wells Fargo's conduct, including but not limited to general damages, expectation, and consequential damages.

## C.    CLAIM THREE: VIOLATION OF WASHINGTON CONSUMER PROTECTION ACT

105.    Plaintiff incorporates herein by reference as though fully set forth at length each and every preceding allegation and statement contained herein, inclusive, of the Factual Allegations.

BARRAZA LAW PLLC
10728 16TH AVE SW Seattle WA 98146
206-933-7861 phone 206-933-7863 fax

106.    Wells Fargo engaged in unfair and deceptive acts and practices in violation of the Washington Consumer Protection Act, Wash. Rev. Code 19.86.020, including but not limited to:

    a.   Mis-applying Plaintiff's payments for years, and wrongly paying an escrow refund to the chapter 13 trustee that then was unavailable to cure the arrearage on the loan.

    b.   Engaging in conduct that would mislead an average loan borrower.

    c.   Sending an escrow refund to the chapter 13 trustee, and then sending a Response to the Notice of Final Cure payment that demanded cure of the shortage that was directly caused by Wells Fargo's error, thereby causing the dismissal of the Plaintiff's chapter 13 case.

    d.   Failing to put Mr. Flores on notice of its various activities servicing his account in a language he could understand. Section 4.2 of the Making Home Affordable Program Handbook for Servicers of Non-GSE Mortgages states that mortgage servicers "must ensure that its staff is able to effectively communicate with all borrowers, including borrowers with limited English proficiency." While Mr. Flores admits that he received the various notices that Wells Fargo mailed to him throughout his bankruptcy, he asserts that Wells Fargo knew or should have known that English is not his first language and providing him notices or correspondence in English was not reasonably calculated to apprise him of account events.

107.    Defendants' deceptive acts or practices occurred in its trade or business and are capable of deceiving a substantial portion of the public. Given the terms of settlement agreement between Wells Fargo and the U.S. bankruptcy trustee in the State of Maryland, it is undeniable that the bank's conduct not only has the capacity to deceive but has in fact deceived a substantial portion of the public.

BARRAZA LAW PLLC
10728 16TH AVE SW SEATTLE WA 98146
206-933-7861 phone 206-933-7863 fax

108.    Additionally, Defendants were in a superior informational position in that the Plaintiff cannot be reasonably expected to know the accounting of their own mortgage loan – Wells Fargo alone possessed the information necessary to calculate the proper balance.

109.    As such, Defendants' general course of conduct as alleged herein is injurious to the public interest, and the acts complained of herein are ongoing and/or have a substantial likelihood of being repeated.

110.    As a direct and proximate result of Defendants' unfair acts or practices, Plaintiff suffered injury.

111.    The injury that resulted from Wells Fargo's conduct include loss of opportunity, encompassing the opportunity to receive a discharge from the bankruptcy court.

112.    Wells Fargo's violation of the CPA caused Plaintiff to lose not one, but both of his commercial vehicles, and suffer a deficiency for which he is still liable.

113.    Plaintiff was not aware until at least March 5, 2019, and arguably much later upon his expert's completion of his investigation of the March 5, 2019 correspondence, the true nature and scope of Wells Fargo's nearly continuous acts of deception and unfairness.

114.    Wells Fargo caused an arrears in his account in the amount of $15,663.12, and thousands more in interests which continue to accrue on the faulty balance Wells Fargo claims Plaintiff owes.

115.    Wells Fargo's conduct caused Plaintiff to suffer the consequences flowing from the Loan being improperly deemed delinquent, which include but not limited to accrued interests, late fees and penalties and expenses relating to in default and foreclosure.

116.    Wells Fargo's conduct caused Plaintiff to lose valuable time that he could use to earn an income as well as resources he has spent to get to the bottom of his mortgage account.

117.    Plaintiff has incurred fees paid to attorneys and experts who assisted him in analyzing what Wells Fargo has done.

BARRAZA LAW PLLC
10728 16TH AVE SW SEATTLE WA 98146
206-933-7861 phone 206-933-7863 fax

118.    Wells Fargo's conduct also caused Plaintiff's credit rating to be diminished, marking it much more expensive, if not impossible for him to obtain credit.

119.    The Plaintiff's Property, in particular, has been tainted by Wells Fargo's transmission and recording of foreclosure documents.

120.    Plaintiff is therefore entitled to an order enjoining the conduct complained of herein; actual damages; treble damages pursuant to Wash. Rev. Code 19.86.090; costs of suit, including a reasonable attorney's fee; and such further relief as the Court may deem proper.

121.    Plaintiff is entitled to exemplary damages because Defendant acted in bad faith in deliberate or reckless disregard of his rights and their obligation to hold Plaintiff's escrow funds in trust. The actions of Defendants as alleged herein constitute violations of the Washington Consumer Protection Act, and: (1) have occurred in trade or commerce; (2) are deceptive as alleged above; (3) negatively affect the public, including thousands of Washington residents who have loans with Wells Fargo in a chapter 13 bankruptcy; and (4) causing injuries to Plaintiff as alleged above.

### D.    CLAIM FOUR: NEGLIGENT MISREPRESENTATION

122.    Plaintiff repeats and realleges and  incorporate  by  reference  the  foregoing paragraphs.

123.    The tort of negligent misrepresentation occurs when the defendant, in the course of business, profession, employment, or a transaction in which the defendant has a pecuniary interest, negligently supplies false information for the guidance of others in their business transactions, and the plaintiff justifiably relies on such information to his detriment.

124.    Under the circumstances alleged, Wells Fargo owed Plaintiff a duty to provide him with accurate information regarding the amount he owed on his loan, loan modification process and to comply with their obligations to reconcile his account in accord with the representations made by Defendant in the Response to Notice of Cure.

BARRAZA LAW PLLC
10728 16TH AVE SW SEATTLE WA 98146
206-933-7861 phone 206-933-7863 fax

125.    Wells Fargo committed negligent misrepresentation against Plaintiff because it is in the business of mortgage lending and loan servicing, upon whom the consumers look to for information about their mortgage account and to make sufficient payments to keep their home and ultimately own it free and clear of any encumbrances. Wells Fargo's compensation for lending and servicing mortgage loans comes directly from payments made by the consumers towards their loans. Yet, Wells Fargo negligently supplied false or incorrect information to the bankruptcy trustee as well as to the Plaintiff, intending for these parties to rely upon the information it provides, including promising to reconcile the account and timely post trustee-tendered payments.

126.    Plaintiff was not aware until at least March 5, 2019, and arguably only later, upon his expert's completion of his investigation of the March 5, 2019 correspondence, the true nature and scope of Wells Fargo's nearly continuous misrepresentations.

127.    Wells Fargo knew or should have known that Plaintiff made every payment that was due in a timely manner and the account was never delinquent during the five years of the Chapter 13 bankruptcy and beyond. Yet, it incorrectly applied Plaintiff's payment to the escrow account, deemed the mortgage account to be delinquent, and wrongfully computed interest and other fees based on this unilateral and artificial delinquency. Wells Fargo was negligent in its misapplication and miscalculation of the balance due and owing every month, as well as the principal balance, and its failure to respond to the Plaintiff's repeated inquiry to correct its errors. Plaintiff had no option but to rely upon Wells Fargo's acts and omissions as there was no other entity or person that he could turn to. It was also foreseeable to Wells Fargo that the errors would destroy not only the Chapter 13 bankruptcy case, but also affect the mortgage loan status adversely.  It was foreseeable to Wells Fargo that left uncorrected, the errors made by Wells Fargo would cause monetary and other damages to the Plaintiff, including the permanent loss of his homestead.

128.    Supplying such obviously false information demonstrates a lack of exercise of reasonable care or competence in communicating with Plaintiff.

BARRAZA LAW PLLC
10728 16TH AVE SW SEATTLE WA 98146
206-933-7861 phone 206-933-7863 fax

129.    Plaintiff justifiably relied on Wells Fargo's misrepresentations, falsely believing that his bankruptcy dismissal and lack of a proper loan modification review were based proper even though he had not understanding how he could be delinquent when he had made every payment.

130.    The injury that resulted from Wells Fargo's negligent misrepresentation include loss of opportunity, encompassing the opportunity to receive a discharge from the bankruptcy court. Wells Fargo's violation of the CPA caused Plaintiff to lose not one, but both of his commercial vehicles, and suffer a deficiency for which he is still liable. Wells Fargo caused an arrears in his account in the amount of $15,663.12, and thousands more in interests which continue to accrue on the faulty balance Wells Fargo claims Plaintiff owes. Wells Fargo's negligent misrepresentation caused Plaintiff to suffer the consequences flowing from the Loan being improperly deemed delinquent, which include but not limited to accrued interests, late fees and penalties and expenses relating to in default and foreclosure. Wells Fargo's negligent misrepresentation caused Plaintiff to lose valuable time that he could use to earn an income as well as resources he has spent to get to the bottom of his mortgage account.  Plaintiff has incurred fees paid to attorneys and experts who assisted him in analyzing what Wells Fargo has done. Wells Fargo's conduct also caused Plaintiff's credit rating to be diminished, marking it much more expensive, if not impossible for him to obtain credit. The Property has been tainted by Wells Fargo's transmission and recording of foreclosure documents.

## E.    CLAIM FIVE: NEGLIGENCE

131.    Plaintiffs repeat and reallege and incorporate by reference to the foregoing paragraphs.

132.    At common law, every individual owes a duty of reasonable care to refrain from causing foreseeable harm in his interactions with others. Wells Fargo owes Plaintiff a duty of care not to mishandle the payments he made pursuant to the Confirmed Chapter 13 Bankruptcy Plan, which it admitted to breaching. Furthermore, Wells Fargo has a duty to

AMENDED COMPLAINT - 21

BARRAZA LAW PLLC
10728 16TH AVE SW SEATTLE WA 98146
206-933-7861 phone 206-933-7863 fax

promptly respond to Plaintiff's inquiries concerning the status of his payments and the status of his mortgage loan, and to correct any errors made. By avoiding Plaintiff's inquiry, and delaying the correction of its own accounting mistakes, Wells Fargo breached its duty of care toward Plaintiff.  It was foreseeable to Wells Fargo that not only its accounting errors would harm Plaintiff, its delay in investigating and correcting the errors have further exacerbated the harm suffered by the Plaintiff.

133.   Plaintiff was not aware until at least March 5, 2019, and arguably only much later, upon his expert's completion of his investigation of the March 5, 2019 correspondence, the true nature and scope of Wells Fargo's nearly continuous negligence.

134.   But for Wells Fargo's negligence, Plaintiff's Chapter 13 Plan would not have blown up and denied him the benefit of reorganization. The injury that resulted from Wells Fargo's conduct include loss of opportunity, encompassing the opportunity to receive a discharge from the bankruptcy court. Wells Fargo's negligence caused Plaintiff to lose not one, but both of his commercial vehicles, and suffer a deficiency for which he is still liable. Wells Fargo caused an arrears in his account in the amount of $15,663.12, and thousands more in interests which continue to accrue on the faulty balance Wells Fargo claims Plaintiff owes. Wells Fargo's negligence caused Plaintiff to suffer the consequences flowing from the Loan being improperly deemed delinquent, which include but not limited to accrued interests, late fees and penalties and expenses relating to in default and foreclosure. Wells Fargo's negligence caused Plaintiff to lose valuable time that he could use to earn an income as well as resources he has spent to get to the bottom of his mortgage account.  Plaintiff has incurred fees paid to attorneys and experts who assisted him in analyzing what Wells Fargo has done. Wells Fargo's conduct also caused Plaintiff's credit rating to be diminished, making it much more expensive, if not impossible for him to obtain credit. The Property, in particular, has been tainted by Wells Fargo's transmission and recording of foreclosure documents.

BARRAZA LAW PLLC
10728 16TH AVE SW SEATTLE WA 98146
206-933-7861 phone 206-933-7863 fax

1

### F.     CLAIM SIX: CONVERSION

2     135.    Plaintiffs repeat and reallege and incorporate by reference to the foregoing

3     paragraphs.

4     136.    Conversion is the unjustified, willful interference with a chattel which deprives

5     a person entitled thereto the right of possession. Wrongful intend is not an element of

6     conversion, and good faith is not a defense.  Therefore, neither good nor bad faith, neither

7     care nor negligence, neither knowledge nor ignorance, are the gist of the action in

8     conversion.  Money is a proper subject of conversion so long as it is capable of being

9     identified. In this case, Wells Fargo admitted to taking Plaintiff's identifiable payments and

10    misapplying them to the escrow account.  But Wells Fargo also took some of Plaintiff's

11    payments and did not apply them at all. One example of identified funds that was converted

12    by Wells Fargo is on March 29, 2018, Wells Fargo served Plaintiff Flores with a statutory

13    Notice of Pre-Foreclosure Options, as well as informing him of $222.72 being held in an

14    "unapplied account." Wells Fargo's conversion of Plaintiff's monies was improper and gave

15    rise to liability for which Plaintiff can recover fully.

16    137.    Plaintiff was not aware until at least March 5, 2019, and arguably only later,

17    upon his expert's completion of his investigation of the March 5, 2019 correspondence, the

18    true nature and scope of Wells Fargo's conversion.

19    138.    As a result of Wells Fargo's conversion of Plaintiff's monies, Plaintiff's

20    Chapter 13 Plan blew up, he was denied the benefit of reorganization, and he faced the real

21    potential of losing his home thereafter when Wells Fargo continued their actions. The injury

22    that resulted from Wells Fargo's conversion include loss of opportunity, encompassing the

23    opportunity to receive a discharge from the bankruptcy court. Wells Fargo's conversion

24    caused Plaintiff to lose not one, but both of his commercial vehicles, and suffer a deficiency

25    for which he is still liable. Wells Fargo caused an arrears in his account in the amount of

26    $15,663.12, and thousands more in interests which continue to accrue on the faulty balance

27    Wells Fargo claims Plaintiff owes. Wells Fargo's conversion caused Plaintiff to suffer the

AMENDED COMPLAINT - 23

BARRAZA LAW PLLC
10728 16TH AVE SW SEATTLE WA 98146
206-933-7861 phone 206-933-7863 fax

consequences flowing from the Loan being improperly deemed delinquent, which include but not limited to accrued interests, late fees and penalties and expenses relating to in default and foreclosure. Wells Fargo's conversion caused Plaintiff to lose valuable time that he could use to earn an income as well as resources he has spent to get to the bottom of his mortgage account.  Plaintiff has incurred fees paid to attorneys and experts who assisted him in analyzing what Wells Fargo has done. Wells Fargo's conduct also caused Plaintiff's credit rating to be diminished, marking it much more expensive, if not impossible for him to obtain credit. The Property, in particular, has been tainted by Wells Fargo's transmission and recording of foreclosure documents.

### G.    CLAIM SEVEN: TORT OF OUTRAGE

139.    Plaintiffs repeat and reallege and incorporate by reference to the foregoing paragraphs.

140.    To constitute outrage, the complained-of conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. The tort of outrage does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.

141.    Wells Fargo's mishandling of Plaintiff's payments, which occurred after he made all payments under the Confirmed Plan, caused his bankruptcy case to blow up. He lost one of his vehicles which was necessary for him to work as much as before the loss of the vehicle.  Wells Fargo refused to consider him for a loss mitigation plan by misleadingly blaming his poor payment history that Wells Fargo caused. Nearly thirty times over the course of two years, Wells Fargo kept telling Plaintiff that it would respond to his inquiries while declaring the Loan to be in default and threatening him with foreclosure. Plaintiff did take Wells Fargo at its word and waited in earnest for resolution each time the bank made him a promise. By contrast, Wells Fargo did not bother investigating into the concerns raised, but unilaterally and arbitrarily dealt with Plaintiff's payments; making refunds of

BARRAZA LAW PLLC
10728 16TH AVE SW SEATTLE WA 98146
206-933-7861 phone 206-933-7863 fax

payments while declaring the account delinquent, failing to apply payments but to park Plaintiff's monies into an "unapplied account" allowing for interest to accrue unchecked while derailing his bankruptcy and thereafter continuing to send out threats of foreclosure.

142.    Wells Fargo's conduct, in its totality, is a type of financial terrorism which went beyond all possible bounds of decency as to be utterly intolerable in a civilized community. Wells Fargo in fact knew about the "systemic problem" inherent in its software program used to analyze escrow accounts in 2013 and agreed to provide remedies to thousands affected borrowers in 2015. Yet, it allowed for the systemic problem to continue affecting Plaintiff's loan while promising to complete a reconciliation that it finally completed nearly two years after it promised to do so in its response to the notice of cure and only after it was forced to do. Even then, the Plaintiff and his counsel were completely confused by Wells Fargo's unintelligible response, forcing the Plaintiff to spend over $10,000 to figure out the source and scope of the financial wreckage.

143.    In this district, the Court has held that the servicer committed the tort of outrage when it "adopted a strained and unprincipled analysis of the deed of trust to justify the imposition of enormous charges directly onto the borrower's mortgage statements, and the servicer reasonably should have known that the charges would have caused immense emotional distress." *Lucero v. Cenlar FSB*, 2016 U.S. Dist. LEXIS 10430 (W.D. Wash. Jan28, 2016).

144.    Here, Wells Fargo knew of the problem inherent in its system relating to escrow analysis and application of mortgage payments of thousands of borrowers and promised to clean up its act. Yet, Wells Fargo allowed the problem to infect Plaintiff's loan, then falsely represented that Plaintiff's loan was in default, and threatened foreclosure of his property.

145.    The Plaintiff did not discover Wells Fargo's errors with his loan account until March 5, 2019 at the earliest, as their errors were concealed from him.

BARRAZA LAW PLLC
10728 16TH AVE SW SEATTLE WA 98146
206-933-7861 phone 206-933-7863 fax

146.    When Plaintiff hired an attorney to assist him to inquire about the status of his loan, Wells Fargo delayed, delayed, and delayed, causing Plaintiff to incur a multitude of damages ranging from being denied the bankruptcy discharge, losing one of his work vehicles and being liable for the deficiency from their repossession, incurring interest on an inflated loan amount as well as fees and costs relating to the default, investigate the accounting virus Wells Fargo let loose on his mortgage account, amend his taxes, and defend himself from foreclosure.

147.    One can imagine the enormous frustration that Plaintiff was experiencing while trying to obtain information from Wells Fargo for more than two years, but that would only be one source of suffering. Plaintiff also experienced anger, anxiety, shame, and anguish. Wells Fargo did not just throw Plaintiff's bankruptcy case into chaos, it also helped to end his marriage. One only has to look at the sheer number of promises made by Wells Fargo, during the years of 2018 and 2019, that it would respond to Plaintiff's inquiries, and the contradiction caused by Wells Fargo's actions of determining the account to be in default, inflating the amount due and owing on the account, and taking steps to foreclosure, to feel the strongest feeling of outrage and extreme repugnancy.  As observed by the *Lucero* court: "Regardless of whether [the bank] was demanding immediate payment or was simply threatening to collect them in the future, the message was clear: continue this litigation and we will take your home. Such conduct is beyond the bounds of decency and is utter intolerable." Here, Wells Fargo never had the intent to correct its own errors. Wells Fargo was simply placating Plaintiff, albeit in the most transparent manner, while using the delay to accelerate the Loan and to work up the foreclosure. Wells Fargo's conduct was beyond the bounds of decency and utterly intolerable by the community we live in.

148.    Plaintiff suffered and continue to suffer from severe emotional distress as a result of Defendant's conduct.

**BARRAZA LAW PLLC**
10728 16TH AVE SW SEATTLE WA 98146
206-933-7861 phone 206-933-7863 fax

149.    Plaintiff's distress is manifested in feelings of fear, depression, anger and helplessness, which has led him to suffer from anxiety, sleeplessness, and embarrassment among other symptomologies.

150.    Plaintiff is entitled to compensation due to the poor treatment received from Defendant and their reckless and/or intentional infliction of emotional distress upon him.

**H.      CLAIM EIGHT: VIOLATION OF THE EQUAL CREDIT OPPORTUNITY ACT**

151.    Plaintiff incorporates herein by reference as though fully set forth at length each and every preceding allegation and statement contained herein, inclusive, of the Factual Allegations.

152.    Plaintiff alleges that Wells Fargo violated the Equal Credit Opportunity Act (ECOA), 15 U.S.C. §§ 1691–1691f (2006).

153.    ECOA makes it "unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction ... on the basis of race, color, religion, national origin, sex or marital status, or age." 15 U.S.C. § 1691(a)(1).  One way that the ECOA effectuates this goal  is through its notice requirement which states:" Each applicant against whom adverse action is taken shall be entitled to a statement of reasons for such action from the creditor." Schlegel v. Wells Fargo Bank, N.A., 720 F.3d 1204, 1210 (9th Cir. 2013)

154.    Plaintiff contends that Defendants' denial of his request to be considered for a loan modification is a "revocation of credit" for purposes of the definition of "adverse action." 15 U.S.C. § 1691(d)(6).

155.    Plaintiff applied for credit, a loan modification, in order to fix Wells Fargo's error in application of payments. The Plaintiff was current on his payments to Wells Fargo at the time.  The Plaintiff was thus an "applicant" as defined under the ECOA. 15 U.S.C. § § 1691a (b) and § 1691(a)(d).

156.    Plaintiff applied for credit, a loan modification with Defendants. See Schlegel v. Wells Fargo Bank, NA, 720 F.3d 1204, 1210 (9th Cir.2013).

BARRAZA LAW PLLC
10728 16TH AVE SW SEATTLE WA 98146
206-933-7861 phone 206-933-7863 fax

157.   Plaintiff's application was summarily denied on March 27, 2018, when Wells Fargo sent a letter to the Plaintiff's attorney explaining that it would not consider the Plaintiff for a modification due to there not being a large enough change since the "last review" that Wells Fargo did – but there was no "last review", so the reason given for the denial was false on its face.

158.   Plaintiff alleges that Defendants violated the ECOA when they failed to follow the procedural requirements that creditors must follow in notifying any applicant when action is taken on their credit application.

159.   Defendants' March 27, 2018 letter denying Plaintiff's request for a modification failed to give the Plaintiff any reasons for its adverse action 15 U.S.C. § 1691(d)(2).

160.   The Plaintiff was current at the time of the March 27, 2018 denial. 15 U.S.C. § 1691(d)(6).

161.   Wells Fargo failed to provide a reason for the adverse action and/or to give notification of the Plaintiff's rights to request reasons for the notification and the person or office where such a statement could be obtained. 15 U.S.C. § 1691(d)(2)(A) and (B).

162.   Wells Fargo revokes credit when they annul, repeal, rescind or cancel a right to defer payment of a debt.

163.   Wells Fargo annulled, repealed, rescinded, or canceled the Plaintiff's right to defer payment of a debt or repayment of their loan.

164.   Plaintiff was not aware until at least March 5, 2019, and arguably only later, upon his expert's completion of his investigation of the March 5, 2019 correspondence, that Wells Fargo misrepresented its refusal to consider him for a loan modification because it hid its error – the true cause of the refusal to consider him for a modification - until March 5, 2019.

165.   Failure to give the ECOA notice gives Plaintiff a private right of action to sue for the violation of ECOA. 15 U.S.C. § 1691e ("Any creditor who fails to comply with any

BARRAZA LAW PLLC
10728 16TH AVE SW SEATTLE WA 98146
206-933-7861 phone 206-933-7863 fax

requirement imposed under this subchapter shall be liable to the aggrieved applicant for any actual damages sustained by such applicant").

166.     The Plaintiff is entitled to actual damages, attorney's fees and costs, punitive damages in the amount of $10,000 and any other equitable relief the court may deem necessary for violations of the ECOA. 15 U.S.C. § 1691e(a) –(d).

## I.     CLAIM NINE: VIOLATION OF THE REAL ESTATE SETTLEMENT PROCEDURES ACT (VIOLATION OF 12 USC 2605(e))

167.     Plaintiff incorporates herein by reference s though fully set forth at length each and every preceding allegation and statement.

168.    12 U.S.C. § 2605(e)(1)(A), states:

"[i]f any servicer of a federally related mortgage loan receives a qualified written request from the borrower (or an agent of the borrower) *for information relating to the servicing of such loan*, the servicer shall provide a written response acknowledging receipt of the correspondence within 20 days (excluding legal public holidays, Saturdays, and Sundays) unless the action requested is taken within such period." 12 U.S.C. § 2605 (e)(1)(A)(emphasis added).

169.    12 U.S.C. § 2605(e)(1)(B) defines a qualified written request as:

"[A] written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B).

170.     The statute also requires that once a qualified written request has been made, the creditor has 60 days to provide the borrower with either:

"a written explanation or clarification that includes--
(B)(i) to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer; and
(ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower ; or
(C)(i) information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and

BARRAZA LAW PLLC
10728 16TH AVE SW SEATTLE WA 98146
206-933-7861 phone 206-933-7863 fax

(ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower."
12 U.S.C. § 2605 (e)(2)(B)—(C)

171.   Under 12 USC § 2605(k)(1)(E), servicers shall not "fail to comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter."

172.   At all relevant times, Wells was, and continues to be, a "servicer" under 12 C.F.R. § 1024.2(b).

173.   At all relevant times, Wells Fargo was, and continues to be, a "servicer" under 12 C.F.R. § 1024.2(b).

174.   At all relevant times, Plaintiff's loan was, and continues to be, a "mortgage loan" under 12 C.F.R. § 1024.31.

175.   12 CFR § 1024.35(e)(1)(i) states:
In general, a servicer must respond to a notice of error by either:
(A) Correcting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance; or
(B) Conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.
(ii) Different or additional error. If during a reasonable investigation of a notice of error, a servicer concludes that errors occurred other than, or in addition to, the error or errors alleged by the borrower, the servicer shall correct all such additional errors and provide the borrower with a written notification that describes the errors the servicer identified, the action taken to correct the errors, the effective date of the correction, and contact information, including a telephone number, for further assistance.

176.   Wells Fargo failed to conduct a reasonable investigation of the Plaintiff's notices of error. *Wilson v. Bank of Am.*, 48 F. Supp. 3d 787, 804 (E.D. Pa. 2014) ("The addition of the word 'reasonable' seemingly imposes a substantive obligation that is not

BARRAZA LAW PLLC
10728 16TH AVE SW SEATTLE WA 98146
206-933-7861 phone 206-933-7863 fax

satisfied by the mere procedural completion of some investigation followed by a written statement of reasons.").

177.   Wells Fargo's responses to the notices of error were untimely and opaque, including the March 5, 2019 communication which was so unintelligible as to be no response at all. *Wilson v. Bank of Am.*, 48 F. Supp. 3d 787 (E.D. Pa. 2014) (plaintiff sufficiently alleged that servicer did not conduct a reasonable investigation of her notices of error where the servicer sent her responses with contradictory explanations for why she was not given a permanent loan modification

178.   12 CFR § 1024.36(d)(1) requires:

> (1) Investigation and response requirements. Except as provided in paragraphs (e) and (f) of this section, a servicer must respond to an information request by either:
> (i) Providing the borrower with the requested information and contact information, including a telephone number, for further assistance in writing; or
> (ii) Conducting a reasonable search for the requested information and providing the borrower with a written notification that states that the servicer has determined that the requested information is not available to the servicer, provides the basis for the servicer's determination, and provides contact information, including a telephone number, for further assistance. 12 CFR § 1024.36(d)(1).

179.   Wells Fargo failed to conduct a reasonable investigation of the Plaintiff's information requests and its communications related thereto were untimely and unreasonable, including the March 5, 2019 communication which was so unintelligible as to be no response at all.

180.   Under 12 C.F.R. § 1024.41, the implementing regulations of the Real Estate Settlement Procedures Act ("RESPA"), if the servicer denies this application for any trial or permanent loan modification option available to the borrower, it shall state in the notice sent to the borrower "the specific reason or reasons for the servicer's determination for each such trial or permanent loan modification option." 12 C.F.R. § 1024.41(d).

BARRAZA LAW PLLC
10728 16TH AVE SW SEATTLE WA 98146
206-933-7861 phone 206-933-7863 fax

181.    Wells violated 12 C.F.R. § 1024.41(c)(1)(i) by not evaluating Plaintiff for a HAMP or HAMP-like modification, even though this program was required to be a part of Wells Fargo's loss mitigation and was described as an alternative.

182.    In the alternative, if Wells did evaluate Plaintiffs for a HAMP modification, or a similar loss mitigation program, Wells violated 12 C.F.R. § 1024.41(d) by not providing Plaintiff with the specific reasons for its determination not to offer him a HAMP modification or a HAMP-like modification.

## V.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that judgment be entered against Defendant Wells Fargo for the following:

1)    For declaratory relief that Wells Fargo conduct violated the Washington Consumer Protection Act;

2)    For judgment that Wells Fargo committed the torts of Negligence, Negligence Misrepresentation, Conversion and Outrage;

3)    For judgment that Wells Fargo breached the loan documents and the bankruptcy court's order confirming the Chapter 13 Plan;

4)    For all resulting damages from Wells Fargo breach of contract and violation of statutes and tort laws; including attorney fees and costs under the Deed of Trust;

5)    Damages including emotional distress, for the conduct alleged in an amount to be fully proven at the time of trial;

6)    For all remedies provided under the WA CPA, RCW 19.86.090, including treble damages up to $25,000 for each and every violation of the Consumer Protection Act, and attorney fees and costs under RCW 19.86.090;

7)    Plaintiff reserves his request for injunctive relief pursuant to RCW 19.86.090.

8)    For actual damages, attorney's fees and costs, punitive damages in the amount of $10,000 and any other equitable relief the court may deem necessary for violations of the ECOA under 15 U.S.C. § 1691e(a) –(d);

BARRAZA LAW PLLC
10728 16TH AVE SW SEATTLE WA 98146
206-933-7861 phone 206-933-7863 fax

9)   For pre-judgment interest on the above amounts as authorized by law;

10)   For other relief as the Court deems just and equitable;

11)   For leave to amend this complaint as needed and as required; and

Respectfully submitted this 2nd day of April 2021.

BARRAZA LAW, PLLC

_/s/ V. Omar Barraza_
V. Omar Barraza, WSBA #43589
10728 16th Avenue SW
Seattle, Washington 98146
omar@barrazalaw.com
Tel.: (206) 933-7861
Fax.: (206) 933-7863

HENRY & DEGRAAFF, PS

_/s/ Christina L. Henry_
Christina L. Henry, WSBA #31273
787 Maynard Avenue South
Seattle, Washington 98104
chenry@hdm-legal.com
Tel.: (206) 330-0595
Fax: (206) 400-7609