The Honorable Robert S. Lasnik

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

Julian Flores aka Julian Flores Sanchez,

               Plaintiff,

v.

Wells Fargo Bank, N.A.,

               Defendant.

No.  2:21-cv-00006-RSL

**RESPONSE TO MOTION TO DISMISS AMENDED COMPLAINT**

HENRY & DEGRAAFF, PS
119 1ST AVE S. STE 500
SEATTLE, WA 98104
206-933-7861 phone 206-933-7863 fax

## I.   INTRODUCTION

Mr. Flores seeks claims against Wells Fargo for acting unlawfully to collect alleged arrearages that were not owed but nonetheless derailed his confirmed bankruptcy plan, provoked a wrongful default, collections activity and the initiation of non-judicial foreclosure proceedings, caused intense emotional distress, caused the loss of a car, and diminished the profit from the sale of his rental home. There can be no dispute that Mr. Flores' claims contain independent theories of relief not solely based on bankruptcy claims whose resolution would not affect the enforcement of provisions of the Bankruptcy Code. In any case, Wells Fargo's motion cited no specific bankruptcy provisions implicated by Mr. Flores' claims.

## II.   FACTS

### A.  Facts Misrepresented in Motion to Dismiss

Wells Fargo mischaracterizes Mr. Flores' factual allegations as being "solely" based on conduct arising in a bankruptcy case, which is a gross mischaracterization of Flores' Amended Complaint. Dkt No. 22 at 4. Plaintiff filed for bankruptcy on September 1, 2011, listing three properties: the Property, another located at 30414 1st Place South, Federal Way, WA 98003 (which he co-owned with two relatives), and a third property located at 1410 South 282nd Pl, Federal Way, WA 98003 (which he co-owned with one relative). *See* Dkt No. 19, Amended Complaint at ¶ 12. The Court confirmed Mr. Flores' Bankruptcy Plan and provided him with specific relief, allowing him to surrender the property located at 1410 S 282nd Place to the secured first position deed of trust holder, and to surrender 30414 1st Place South with a release of the indebtedness of $44,000, the second mortgage on the property, if the plan was completed with a discharge. *Id*. at ¶ 13. Most importantly, the Plan Mr. Flores would have been able to cure any arrears and reinstate the mortgage loan with Wells Fargo on his residence. *Id*. at ¶ 13, Ex. B.

Over more than six years, Mr. Flores tendered 75 timely plan payments (three for $650 and 72 for $1,975) totaling $140,150 to Wells Fargo with a conduit Chapter 13

RESPONSE TO MOTION TO DISMISS AMENDED
COMPLAINT- 2

HENRY & DEGRAAFF, PS
119 1ST AVE S. STE 500
SEATTLE, WA 98104
206-933-7861 phone 206-933-7863 fax

bankruptcy plan where the Chapter 13 cured the arrears and reinstate the loan for Mr. Flores' mortgage lender, Wells Fargo. *Id*. at ¶ 13-14. It is undisputed that he diligently tendered all the payments his confirmed Plan required him to pay. *Id*. at ¶ 28. Yet Mr. Flores' bankruptcy plan never completed as his case was ultimately dismissed on December 1, 2017, and administratively closed on March 7, 2018, purportedly because the plan extended beyond 60 months without completion. Dkt No. 23, Request of Judicial Notice, at Ex. H. In actuality, the primary cause of the Debtor's bankruptcy dismissal was Wells Fargo's incorrect refund of a false escrow overage of $12,953.72 that created their own accounting error causing the Chapter 13 Trustee to extend the bankruptcy case more than 60 months to resolve and leading to dismissal. Dkt No. 19, Amended Complaint, at ¶ 39. Additionally, the Debtor's 30414 1st Avenue South Property was subsequently sold only after paying $44,000 to the second mortgage that would otherwise have been stripped and discharged in his chapter 13 bankruptcy. *Id*. at ¶ 14, 70, Ex. G.

Prior to the dismissal, Wells Fargo informed the Chapter 13 Trustee that the Plaintiff had cured the pre-petition mortgage default through the bankruptcy plan payments, but he still owed eight *post-petition* mortgage payments, or $15,663.12 for the period October 15, 2016, through May 15th. *Id*. at ¶ 15, Ex. D. The Response also included a qualification because it stated: "*Wells Fargo is in the process of reconciling the account and will amend the response to Notice of Final Cure if necessary" and subsequently filed an amended proof of claim on July 14, 2017, relating back to the 2011 account history, but failed to provide any meaningful reason for the amendment which included confirmation that the monthly payment included an escrow amount of $181.08 and a change in the pre-petition arrearage from $4,631.77 to $4,204.31. *Id*. at ¶ 17. Wells Fargo never amended its response to the Notice of Final Cure and did not complete its promised reconciliation until his post-bankruptcy counsel assisted him to demand that it do so. *Id*. at ¶ 17 and 18.

Mr. Flores, whose English-language proficiency is limited, subsequently hired Barraza Law, PLLC, a bilingual lawyer, on or about January 12, 2018. *Id*. at ¶ 23. Mr. Flores

submitted a loan modification application through his new counsel which was complete as of March 2, 2018. *Id*. at ¶ 24.[1] On March 28, 2018, Wells Fargo served Mr. Flores with a statutory Notice of Pre-Foreclosure Options as required by RCW 61.24.031(1)(c). *Id*. at ¶ 33. Wells Fargo accelerated the loan on April 2, 2018. *Id*. at ¶ 34. On April 18, 2018, *Id*. at ¶ 32. Mr. Flores, consistent with his ceaseless efforts to save his home, "cured" the "default" and embarked on an arduous request for information that took Wells Fargo more than ten months to resolve and cost him money for attorneys and a tax accountant. *Id*. at ¶ 37 - 70. Although Wells sent a check for $13,195.11, and detailed the results of its investigation, its "answer" was nearly unintelligible, and the Plaintiff then was forced to hire an expert to ascertain exactly what happened to him before filing this lawsuit. *Id*. at ¶ 71.

### III.    ARGUMENT

#### A.  Legal Standard

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 672 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although Rule 12(b)(6) does not require courts to assess the probability that a plaintiff will eventually prevail, the allegations made in the complaint must cross "the line between possibility and plausibility of entitlement to relief." *Id*. "Dismissal can be based on the lack of a cognizable legal theory, or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). In reviewing a Rule 12(b)(6) motion to dismiss, the Court accepts all factual allegations in the Complaint as true and draws all reasonable

---

[1] Since there is no documentation from Wells Fargo in their response to Mr. Flores that the loan modification application and materials were not complete, to the extent the court needs Flores to plead with more particularity, he requests leave to amend. *Id*. at ¶ 27; Dec of Christina L Henry ("Henry Dec") in Support of Response, at ¶ 2, Ex. 9.

RESPONSE TO MOTION TO DISMISS AMENDED
COMPLAINT- 4

HENRY & DEGRAAFF, PS
119 1ST AVE S. STE 500
SEATTLE, WA 98104
206-933-7861 phone 206-933-7863 fax

inferences from those facts in favor of Plaintiff. *See Al-Kidd v. Ashcroft*, 580 F.3d 949, 956 (9th Cir. 2009).[2]

### B. Plaintiff's Claims are Not Preempted by Bankruptcy Law

Wells Fargo's arguments weigh heavily on the theory that many of Flores' claims are not actionable due to general theories about bankruptcy preemption. Dkt No. 22 at 11. However, the Bankruptcy Code does not "generally" preempt state law. In fact, "[w]here the Bankruptcy Code is silent, and no uniform bankruptcy rule is required, the rights of the parties are governed by the underlying nonbankruptcy law." *Paul v. Monts*, 906 F.2d 1468, 1475 (10th Cir. 1990); *Sears, Roebuck and Co. v. Siverly*, 178 F.3d 962 (8th Cir. 1999) (finding state law which prohibited a creditor from sending a collection letter to a debtor who is represented by counsel was not preempted by the Bankruptcy Code).

Absent a clear expression of Congress to the contrary, courts will presume that federal law does not preempt state law. *In re Fed.–Mogul Glob. Inc.*, 684 F.3d at 365. Federal preemption is governed by the Constitution's Supremacy Clause. *Miles v. Okun (In re Miles)*, 294 B.R. 756, 759 (9th Cir. BAP 2003), *aff'd* 430 F.3d 1083 (9th Cir. 2005) ("*Miles I*"). State laws which can coexist with the bankruptcy code will not be preempted. Preemption is not at issue here because there are no allegations in Mr. Flores's complaint that would enable him to improperly "circumvent the remedial scheme of the [Bankruptcy] Code." *MSR Exploration,* 74 F.3d at 914 (state law malicious prosecution claim based on

---

[2] Under the "incorporation by reference" doctrine the Court may consider documents attached to a Rule 12(b) (6) motion to dismiss if they are "documents 'whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading.'" *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). For this case, the respondents respectfully request that this Court consider documents referred to in the Complaint but not expressly attached, which the Plaintiffs have filed as part of a concurrently filed Request for Judicial Notice.

bankruptcy filings preempted). Where "[r]emedies and sanctions for improper behavior and filings in bankruptcy court ... are [provided for in] the Bankruptcy Code ……. uniform rules are particularly important," and the Ninth Circuit has found that preemption is warranted where Congress intended bankruptcy courts to provide an "exclusive cause of action." *Miles*, 430 F.3d at 1091-1092, & n.3. Following this rationale, the Ninth Circuit has found that the bankruptcy code preempts state law in several distinct areas: (1) for state tort actions for damages predicated on the filing of an involuntary bankruptcy petition under 11 U.S.C. § 303(i). *Id.* 430 F.3d at 108' (2) for state law malicious prosecution actions – including the filing of allegedly wrongful proofs of claim for events taking place within the bankruptcy court proceeding are also completely preempted based on the structure and purpose of the Bankruptcy Code. *MSR Exploration,* 74 F.3d at 914, (3) for state law abuse of process claims based on the alleged frivolous filing of a bankruptcy petition. *Gonzales v. Parks*, 830 F.2d 1033, 1035-37 & n.4 (9th Cir. 1987), and (4) although not precedential on this Court, the Ninth Circuit B.A.P. has found preemption in the Bankruptcy context for Washington State CPA claims premised on the filing of a proof of claim. *Chausse*, 399 B.R. at 230.

Confirmation of the Chapter 13 Plan revests property in the debtor.[3] Here, Mr. Flores' claims arose after confirmation of his plan and/or dismissal of his bankruptcy and are thus not bankruptcy laden because   the Ninth Circuit has already found that so long as his claims "are not premised on enforcing the discharge order…. [they do] not necessarily entail[ ] bankruptcy-laden determinations." *Manikan v. Peters & Freedman, L.L.P.,* 981 F.3d 712, 717 (9th Cir. 2020) Additionally, there is no categorical bar to claims brought against a creditor seeking to collect a debt that was merely "provided for" in a bankruptcy proceeding). *Id.*

---

[3] Under provisions of Mr. Flores' confirmed plan, the residence was no longer property of the estate upon confirmation. *See* Dkt No. 23-1, pg. 5, "Section VIII – "Revestment of Property"; *In re Moon,* No. 13-BK-12466-MKN, 2021 WL 62629, at *5 (B.A.P. 9th Cir. Jan. 7, 2021).

HENRY & DEGRAAFF, PS
119 1ST AVE S. STE 500
SEATTLE, WA 98104
206-933-7861 phone 206-933-7863 fax

In *Manikan*, the debtor brought claims against his homeowner's association ("HOA") based on unlawful collection acts consisting of the failure to correctly apply payments and to initiate foreclosure proceedings unlawfully against the debtor when the debtor had cured all arrearages owed to the HOA under the plan and received a discharge. 981 F.3d at 717. The Ninth Circuit found that the amount Manikan paid to the HOA was dictated by the terms of his contract with the HOA, not bankruptcy law. Thus, payments made toward the arrearage owed to his HOA through operation of his bankruptcy plan did not render his nonbankrutpcy claims *inextricably intertwined* with bankruptcy issues. *Id.* There, the Ninth Circuit allowed Manikan's nonbankrutpcy claims to proceed because they did not place the enforcement of "complex, detailed, and comprehensive provisions" of the Bankruptcy Code in the hands of the district court or a jury. *Id.* (quoting *MSR Expl., Ltd. v. Meridian Oil, Inc.*, 74 F.3d 910, 914 (9th Cir. 1996)).

Similarly, here, the amount Mr. Flores paid to Wells Fargo was dictated by the terms of the contractual agreements with Wells Fargo as laid out in the promissory note and deed of trust, provisions of Flores' chapter 13 plan, and the breach of statutory duties owed to Flores apart from the contract that formed the basis of Mr. Flores's claims, all of which are not premised on bankruptcy law. As *Manikin* makes clear, just because Mr. Flores paid arrearage payments to Wells Fargo through operation of a bankruptcy plan does not render any nonbankruptcy claims he may have against Wells Fargo as *inextricably intertwined* with bankruptcy issues. *Manikan,* 981 F.3d at 717. Rather, all of Wells Fargo's actions were independently prohibited, irrespective of any provision in the bankruptcy code, and in contrast to Manikan, Mr. Flores's case *was dismissed without a discharge*, leaving the bankruptcy court with no jurisdictional basis to rule on anything in this case. *See* Dkt No. 19, Amended Complaint at ¶ 14. *See* Supra below, at III.E.2.

### 1. A "Connection" with the Bankruptcy Code

Relying on three cases from the Ninth Circuit, *In re Chausse*, *In re Miles*, and *MSR Exploration, Ltd. V. Merdian Oil, Inc.*, Wells Fargo argues that Mr. Flores' claims are

HENRY & DEGRAAFF, PS
119 1ST AVE S. STE 500
SEATTLE, WA 98104
206-933-7861 phone 206-933-7863 fax

preempted by the Bankruptcy Code because the state law claims have a "connection to his bankruptcy proceeding." *In re Chaussee*, 399 B.R. 225, 232 (9th Cir. B.A.P. 2008); *In re Miles*, 430 F.3d 1083, 1092 (9th Cir. 2005); *MSR Exploration, Ltd..*, 74 F.3d at 914. This conclusion is wrong for three reasons: (1), the bankruptcy case is dismissed and thus the bankruptcy court has no jurisdiction over Mr. Flores' claims, (2) Wells Fargo has not explained how Mr. Flores' claims would upset the "delicate balance" struck in the Bankruptcy Code between debtors and creditors that would justify specific causes of action in this Amended Complaint which are preempted, and (3) the Amended Complaint does not rely "solely" on conduct arising in a bankruptcy proceedings, thus eschewing any notion that the claims alleged  preempt all claims under state law.

Bankruptcy Code *does not* completely preempt state laws that govern relationships and remedies between parties to bankruptcy proceedings. *Miles,* 430 F.3d at 1092. Complete preemption "operates to confer original federal subject matter jurisdiction notwithstanding the absence of a federal cause of action on the face of the complaint." *In re U.S. Healthcare, Inc.*, 193 F.3d 151, 160 (3d Cir. 1999). It applies when the preemptive force of a federal statute is so "extraordinary" that it "converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987). The Supreme Court has found complete preemption in only three contexts: section 301 of the Labor and Management Relations Act ("LMRA"), 29 U.S.C. § 185; section 502 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132; and sections 85 and 86 of the National Bank Act, 12 U.S.C. §§ 85, 86. *In re Miles*, 430 F.3d at 1088.

Despite Wells Fargo's claims to the contrary, there is no Ninth Circuit precedent concerning the Bankruptcy Code's complete preemption of contract claims for breach and violations of good faith and fair dealing, or tort claims such as negligent misrepresentation, negligence, conversion, outrage, and the Consumer Protection Act predicated on acts other than the filing of a proof of claim. Wells Fargo never discussed any overarching principles

governing the federal preemption of state law and does not state any reason why Washington contract or tort law causes of action pled in the Amended Complaint or which provisions of the Bankruptcy Code are relevant to preempt these state law causes of action, nor did it state any reason that it could not comply with both federal and state statutes. Dkt No. 22 at 11-12. Notably, the five considerations for applicable federal preemption for bankruptcy claims are not even discussed.[4]  Since state law claims do not presuppose violations of the Bankruptcy Code, where there is no risk of conflict between enforcement of the state laws and enforcement of the federal bankruptcy laws, there is no basis to dismiss on preemption grounds. *In re Laskowski,* 384 B.R. 518, 529 (Bankr. N.D. Ind. 2008).

## 2.  A Bankruptcy Court Would Not Have Jurisdiction Over Mr. Flores' Claims

Bankruptcy courts have limited jurisdiction. Under 28 U.S.C. § 1334(c) the district court is granted (and by reference, bankruptcy courts) "original but not exclusive jurisdiction of all civil proceedings ...*related to cases under title 11.*" § 1334(b) (emphasis added*). In re Valdez Fisheries Dev. Ass'n, Inc.*, 439 F.3d 545, 547 (9th Cir. 2006). That jurisdiction is even more limited after dismissal of Mr. Flores' Chapter 13 bankruptcy case since the court dissolved the bankruptcy estate and likewise the bankruptcy court's jurisdiction over any cause of action Mr. Flores might have had for matters happening before or after his bankruptcy filing. *See* Bankruptcy Code § 349(b); *Crawford v. Franklin Credit Mgmt. Corp.,* 758 F.3d 473, 483 (2d Cir. 2014).

---

[4] The five considerations driving the application of federal preemption are: (1) the provision for uniform federal bankruptcy laws under Art. I, § 8, cl. 4 of the United States Constitution, *Miles II*, 430 F.3d at 1090; *MSR Expl., Ltd.*, 74 F.3d at 913–15; (2) the congressional grant of exclusive bankruptcy jurisdiction to the federal courts, *Miles II*, 430 F.3d at 1090; *MSR Expl., Ltd.*, 74 F.3d at 913; (3) Congress' enactment of a "complex, detailed, and comprehensive" scheme of bankruptcy laws, *Miles II*, 430 F.3d at 1089 (quoting *MSR Expl., Ltd.*, 74 F.3d at 914); (4) the federal remedies Congress provided for improper conduct in bankruptcy proceedings, thereby indicating "that Congress has considered the need to deter misuse of the process and has not merely overlooked the creation of additional deterrents." *Miles II*, 430 F.3d at 1089 (quoting *MSR Expl., Ltd.*, 74 F.3d at 915); and (5) the policy concern that Congress and the federal courts – rather than state courts – should decide what incentives and penalties should apply in connection with the use (and misuse) of the bankruptcy process. *Miles II*, 430 F.3d at 1090; *Gonzales*, 830 F.2d at 1036. *In re Bral,* 622 B.R. 737, 743 (B.A.P. 9th Cir. 2020).

HENRY & DEGRAAFF, PS
119 1ST AVE S. STE 500
SEATTLE, WA 98104
206-933-7861 phone 206-933-7863 fax

1    Saying that state law claims are barred altogether by the Bankruptcy Code rests on

2  the incorrect premise that the bankruptcy court has jurisdiction over Mr. Flores' post-

3  confirmation matters involving a dismissed case because his alleged causes of action against

4  Wells Fargo either "aris[e] under" title 11 through creation or determination of a statutory

5  provision of that title, they "aris[e] in" title 11 through creation by the bankruptcy code and

6  would thus not exists outside of the bankruptcy case, or there are other jurisdictional

7  prohibitions that prevent nonbankruptcy claims.. *In re Wilshire Courtyard*, 729 F.3d 1279,

8  1285 (9th Cir. 2013).

9              a)        **"Arising In" Jurisdiction is Absent**

10    As to "arising in" jurisdiction, Flores has plausibly plead facts that present issues that

11  are not unique to bankruptcy proceedings such that it would prevent "independent existence

12  outside of the bankruptcy" preventing the case from being brought in another forum."

13  *Wilshire Courtyard*, 729 F. 3d at 1287, (quoting *In re Ray*, 624 F.3d 1124, 1131 (9th Cir.

14  2010). Despite Wells Fargo's attempts to say that all of Flores' claims rest "solely" on

15  bankruptcy-laden claims, his causes of action stem from contractual, tort and statutory duties

16  arising from Wells Fargo's misapplication of payments received from Mr. Flores prior to

17  and after the bankruptcy dismissal. Wells Fargo failed to apply payments as required by the

18  Note and Deed of Trust. *See* Dkt No. 19, Amended Complaint at ¶ 12, Ex. A. Wells Fargo's

19  actions against Mr. Flores are part of Wells Fargo's well-documented pattern of mishandling

20  payments made by debtors in chapter 13 cases through "systemic issues" relating to the

21  program Wells Fargo used to analyze escrow accounts as described in the Settlement

22  between Wells Fargo and the U.S. Trustee's Office, *In re Ernestine C.J. Green*, U.S.

23  Bankruptcy Court for the District of Maryland case number 11-33377-TJC. *Id.* at ¶ 82.

24  Lastly, in Wells Fargo's own correspondence of March 5, 2019, it admitted to failing to

25  ensure the timely posting of mortgage payments fundamental to the success of Mr. Flores's

26  Chapter 13 Plan and to prevent ongoing defaults that led to the initiation of foreclosure

27

HENRY & DEGRAAFF, PS
119 1ST AVE S. STE 500
SEATTLE, WA 98104
206-933-7861 phone 206-933-7863 fax

proceedings against Mr. Flores. *Id.* at ¶ 83. Escrow questions do not exist solely inside of bankruptcy, and thus these claims do not "arise in" bankruptcy.

### b)   "Arising Under" Jurisdiction is Nonexistent.

In like fashion, Wells Fargo also fails to show how these claims "arise[] under" the jurisdiction of the bankruptcy court, because Wells Fargo fails to articulate how Mr. Flores' state-law causes of action would preempt any specific provisions of the bankruptcy code, *Wilshire Courtyard*, 729 F.3d at 1285. Thus, Wells Fargo's reliance on *In re Chaussee,* 399 B.R. 225, 236–237 (9th Cir.BAP2008) is misplaced. In that case, the debtor filed state law consumer protection act claims against a creditor for the filing of proofs of claim in bankruptcy and the Ninth Circuit B.A.P. found that "where Codes and Rules provide a remedy for acts taken in violation of their terms, debtors may not resort to other state and federal remedies to redress their claims lest the congressional scheme behind the bankruptcy laws and their enforcement be frustrated."[5]. That is simply not the case here and any reference to *Chausse* is not relevant.

### c)   "Related to" Jurisdiction and Ancillary Jurisdiction

Likewise, there can be no "related to" jurisdiction, under the "close nexus" *In re Pegasus Gold Corp.,* 394 F.3d 1189, 1194 (9th Cir.2005), because there is way anything Flores does would "affect[] the 'interpretation, implementation, consummation, execution, or administration of the confirmed plan.' " *Id.* (quoting *Binder v. Price Waterhouse & Co. (In re Resorts Int'l, Inc.),* 372 F.3d 154, 166–67 (3d Cir.2004)). In the Chapter 13 context, a "plan" does not exist after dismissal without a discharge or plan completion.

As to ancillary jurisdiction, there is nothing for the bankruptcy court to do to vindicate its authority as there is no allegation of contempt or prior order at issue... *Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 379–80, (1994). Here, even the

---

[5] *See Also - In re Atwood*, 452 B.R. 249, 255 (Bankr. D.N.M. 2011); *see also In re King,* 2010 WL 3851434 (Bankr.D.Colo. Sept.24, 2010) (dismissing debtor's claims for violation of the FDCPA and the Colorado Consumer Protection Act based on defendant's post-petition actions because such claims did not fall within the bankruptcy court's non-core jurisdiction).

RESPONSE TO MOTION TO DISMISS AMENDED
COMPLAINT- 11

HENRY & DEGRAAFF, PS
119 1ST AVE S. STE 500
SEATTLE, WA 98104
206-933-7861 phone 206-933-7863 fax

bankruptcy court's order of dismissal contained no further reservation of jurisdiction that would confer it any future jurisdiction. *See* Dkt No. 23-1 at 35.

### C.  Consumer Protection Act Claims

In a private cause of action, the CPA requires a plaintiff to prove five elements: "(1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) affecting the public interest, (4) injury to a person's business or property, and (5) causation." *Panag v. Farmers Ins. Co. of Wash.*, 166 Wash.2d 27, 37, 204 P.3d 885 (2009); *see also Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wash.2d 778, 780, 719 P.2d 531 (1986). "Failure to satisfy even one of the elements is fatal to a CPA claim." *Sorrel v. Eagle Healthcare, Inc.*, 110 Wn. App. 290, 298, 38 P.3d 1024 (2002).

Wells Fargo contests whether a CPA claim is preempted in bankruptcy which was discussed above, *See* Supra III.B., but otherwise only contests one element, causation.

#### 1.  Flores has Pled Adequate Facts to Show that Wells Fargo Caused Damages and Injuries

Flores has provided uncontroverted testimony about the manner in which he was treated by Wells Fargo and the damages and injuries he sustained as a result. These are recoverable under the plain language of the CPA and its body of case law. *See, Frias v. Asset Foreclosure Services, Inc.*, 181 Wn.2d 412, 430, 334 P.3d 529 (2014), citing to *Panag v. State Farm Ins. Co. of WA,* 166 Wn.2d 27, 57 (2009); *Lyons,* 336 P.3d at 1142 (emphasis added). The entirety of the damages claimed by Flores were directly caused by Wells Fargo's refusal to properly apply Flore's timely mortgage payments, failure to respond to his loan modification application with a fair review, and the months-long delay in review of his requests for information and notices of error. *Id.* at ¶¶ 33, 80, 81, 84, 106, 114-118.

### D.  Contract Claims

The Ninth Circuit has defined a plan of reorganization, as "essentially a contract between the debtor and [its] creditors." *Miller v. United States*, 363 F.3d 999, 1004 (9th Cir. 2004) "A debtor and all creditors are bound by the provisions of a chapter 13 plan. *See* §

HENRY & DEGRAAFF, PS
119 1ST AVE S. STE 500
SEATTLE, WA 98104
206-933-7861 phone 206-933-7863 fax

1327(a). The creditors have a justifiable expectation that they will be treated in accordance with the plan's terms. *In re Richardson,* 192 B.R. 224, 228 (Bankr.S.D.Cal.1996). Thus, the plan acts as a contract between the debtor and the debtor's creditors and governs their contract rights until the plan is properly modified. *See* Hillis Motors, 997 F.2d at 588 (discussing nature of chapter 11 plan); In re *O'Brien,* 181 B.R. 71, 78 (Bankr.D.Ariz.1995)." *In re El*, No. BAP NC-05-1205-MASZ, 2005 WL 6960183, at *4 (B.A.P. 9th Cir. Dec. 23, 2005). (internal quotations omitted).  *See also In re Harvey,* 213 F.3d 318, 321 (7th Cir.2000) (stating that "a confirmed plan acts more or less like a court-approved contract or consent decree that binds both the debtor and all creditors"); *accord, Murphy v. O'Donnell (In re Murphy),* 474 F.3d 143, 148 (4th Cir.2007) ("A confirmed Chapter 13 plan is 'a new and binding contract, sanctioned by the court, between the debtors and their pre-confirmation creditor[s].' ") (quoting *Matter of Penrod,* 169 B.R. 910, 916 (Bankr.N.D.Ind.1994)); *In re Laskowski*, 384 B.R. 518 (Bankr. N.D. Ind. 2008) (holding that RESPA and breach of contract claims were not preempted by Bankruptcy Code).

Wells Fargo asserts that an order confirming the bankruptcy plan cannot constitute a "contract" that could sustain a breach of contract claim, because Flores does not have an enforceable private right of action, but this ignores the fact that the chapter 13 plan acts as a new contract. Wells Fargo was bound to apply payments according to the plan terms, i.e., the contract. *See* Dkt 19-2, Sec. IV.C. C 1-3. When Wells Fargo created a shortage in the account that undermined the Plaintiff's ability to perform under his chapter 13 plan, Wells Fargo breached that contract. The bankruptcy case was dismissed (because of Wells Fargo's wrongful conduct), and Wells Fargo should not now be able to hide behind the fact that the bankruptcy is dismissed to evade their wrongful conduct in breaching the chapter 13 plan.

### 2.  Good Faith and Fair Dealing

A breach of a specific provision of a contract is not a prerequisite to a breach of good faith and fair dealing claim. *Rekhter v. State, Dep't of Soc. & Health Servs.*, 180 Wn.2d 102, 112–13, 323 P.3d 1036, 1041 (2014). As noted by the *Rekhter* court, "It is possible to breach

the implied duty of good faith and fair dealing while fulfilling the terms of the written contract." *Id.* (quoting *Metavante Corp. v. Emigrant Sav. Bank,* 619 F.3d 748, 766 (7th Cir. 2010), *cert. denied*— U.S. —, 131 S.Ct. 1784, 179 L.Ed.2d 653 (2011)). The duty of good faith and fair dealing does not add or contradict express contract terms; rather, it serves as "a check on whatever discretionary authority is granted to the parties under the contract." *Lucero v. Cenlar FSB*, No. C13-0602RSL, 2016 WL 337221, at *6 (W.D. Wash. Jan. 28, 2016). "There is no one-size-fits-all definition of good faith and fair dealing to determine what the duty is. Rather, it is an implied duty that varies somewhat with the context in which it arises and "obligates the parties to cooperate with each other so that each may obtain the full benefit of performance." *Rekhter*, 323 P.3d at 1041 (quoting *Badgett v. Sec. State Bank*, 116 Wn.2d 563, 569 (1991)). One may violate the duty of good faith and fair dealing by, for example, by (1) evading the spirit of a bargain; (2) willfully rendering imperfect performance; (3) interfering with or failing to cooperate in the other party's performance; (4) abusing discretion granted under the contract; or (5) performing the contract without diligence." *Microsoft Corp. v. Motorola, Inc.,* 963 F.Supp.2d 1176 (W.D.Wash. 2013).

The power disparity between the parties gave Wells Fargo the power to misapply payments, assess and determine escrow shortages and overages, refuse payments, initiate foreclosure, and demand the payment of additional monies to "reinstate" the mortgage, that he did not owe to mitigate the situation, pay an attorney and an expert to investigate whether he was in default until such time as he was given no opportunity to address them. *Id.* at ¶¶ 13, 24, 38, 83, 117, 130. Wells Fargo was obliged to conduct a good faith review of his loan modification application and render a decision. 12 C.F.R. § 1024.36(d)(2)(i)(B). Instead, they responded with: ""we are not moving forward with a review of the mortgage for assistance..." We based our decision on a review of the mortgage history, the recent information you provided us, and the current circumstances surrounding the mortgage." Dkt No. 19, Amended Complaint, ¶ 27.

HENRY & DEGRAAFF, PS
119 1ST AVE S. STE 500
SEATTLE, WA 98104
206-933-7861 phone 206-933-7863 fax

In *In re Laskowski*, *"*The plaintiffs alleged that Ameriquest breached the implied covenant of good faith and fair dealing by its inability or unwillingness to account for and properly credit the Trustee's timely payments on the debtor's mortgage." 384 B.R. 518, 534 (Bankr. N.D. Ind. 2008). The Court held that the chapter 13 debtor and the chapter 13 trustee (plaintiffs in that case) could maintain a claim of breach of good faith and fair dealing against the loan servicer based on duties created by the chapter 13 plan. *Id.* Here, Wells Fargo breached its duty of good faith and fair dealing by failing to properly account for and reconcile Mr. Flores' periodic payments under the confirmed plan which resulted in its dismissal and created a wrongful post-dismissal deficiency which Mr. Flores dutifully cured under duress.  Dkt No. 19, at ¶ 36. Wells Fargo wants to wield these mitigation facts to deny a remedy for a national bank's fundamental breach of its very purpose. Dkt No. 19, at ¶¶ 68-69. Wells Fargo breached its duty of good faith and fair dealing by breaching an implied fundamental duty to properly credit and account for funds they received from Flores, and consumer funds in contravention of the bankruptcy plan and deed of trust. *Id.* at ¶ 39. Instead, it allowed its accounting failures to squander his bankruptcy discharge. *Id.* at ¶ 82.

### E.  Tort Claims

#### 1.  Equitable Tolling / Estoppel Extends the Statute of Limitations

Defendant asserts that the statute of limitations bars many of Plaintiff's claims, but the parties disagree about the dates the cause of action accrued, and Mr. Flores contends that his claims did not accrue until he had a "complete and present cause of action… that is, when the plaintiff can file suit and obtain relief." *Wallace v. Kato*, 549 U.S. 384, 388 (2007) (internal quotation marks and citations omitted). Until March of 2019, when Wells Fargo finally reconciled his account, Mr. Flores could not be sure whether he or Wells Fargo caused the apparent account deficiency. While Mr. Flores may have known of a deficiency, he did not – and could not because of the information differential – know the source of the deficiency. Dkt No. 19, Amended Complaint, at ¶ 68-71. Relatedly, Plaintiff's claims are protected from being time-barred because they fall under the "discovery rule," and Wells

HENRY & DEGRAAFF, PS
119 1ST AVE S. STE 500
SEATTLE, WA 98104
206-933-7861 phone 206-933-7863 fax

Fargo is equitably estopped from raising the statute of limitations as an affirmative defense because the statute of limitations is tolled during the time of "self-concealing injuries" inflicted on Mr. Flores, due to Wells Fargo's fraudulent conduct. *Pruss v Bank of Am. N.A.,* NO. C13-1447 MJP, 2013 WL 5913431, at *2 (W.D. Wash. Nov. 1, 2013). The discovery rule is an exception to the standard rule, where "accrual is delayed until the plaintiff has 'discovered' his cause of action." *Id.* (internal citations omitted).

Equitable estoppel applies where a "reasonable plaintiff would not have known of the existence of a possible claim within the limitations period" *Leong v. Potter*, 2003 WL 22439875 (9th Cir. 2003). The elements to be proved are: (1) an admission, statement, or act inconsistent with a claim afterwards asserted; (2) action by another in reasonable reliance on that act, statement, or admission; and third, (3) injury to the party who relied on if the court allows the first party to contradict or repudiate the prior act, statement, or admission. *Board of Regents of Univ. of Wash. v. Seattle,* 108 Wash.2d 545, 551, 741 P.2d 11 (1987). Estoppel is appropriate to prohibit a defendant from raising a statute of limitations defense when a defendant has "*fraudulently* or *inequitably* invited a plaintiff to delay commencing suit until the applicable statute of limitation has expired." *Del Guzzi Constr. Co. v. Global Northwest Ltd., Inc.,* 105 Wash.2d 878, 885, 719 P.2d 120 (1986).

Here, Mr. Flores diligently tendered all payments required by his confirmed conduit bankruptcy plan to the bankruptcy trustee which in turn distributed those payments to Wells Fargo for proper application to his loan. Dkt No. 19, at ¶¶ 14, 28. However, Wells Fargo failed to perform its duties and hold up their part of the bargain and caused his bankruptcy to be dismissed, to induce him to futilely apply for a loan modification and to unnecessarily pay an erroneous arrearage.  It took months for Wells Fargo to even acknowledge Mr. Flores's new counsel's attempts to assist Mr. Flores, including the loan modification application he completed on or about March 2, 2018. *Id.* at 23-36. Wells Fargo then took nearly one year to respond to the Request for Information submitted by Mr. Flores and his

HENRY & DEGRAAFF, PS
119 1ST AVE S. STE 500
SEATTLE, WA 98104
206-933-7861 phone 206-933-7863 fax

counsel on or about April 12, 2018. *Id.* at ¶¶ 39, 43-66, 72-79. By Mr. Flores's count, the statute of limitations on his claims did not accrue until March 5, 2019. *Id.* at ¶ 69.

To the extent the Court agrees with Wells Fargo that his claims accrued on May 31, 2017, Mr. Flores merits a suspension of the statute of limitations period for every month that he tendered periodic payments until the time Wells Fargo itself determined and resolved its continuous failure to properly apply Mr. Flores's continuous stream of periodic payments. It is unreasonable as a matter of equity to expect Mr. Flores to know of his claim when he diligently complied with his fundamental duty of diligence by timely tendering all required periodic payments and patiently awaited Wells Fargo to complete its investigation.

### 2. The Independent Duty Doctrine Applies

Wells Fargo errs when it claims that Flores is foreclosed from making claims in tort because a lender/servicer has no independent tort duty apart from the terms of the contract in this case and that they are based solely on economic loss. Dkt No. 22 at ¶ 15. The independent duty rule does not preclude torts claims between parties in a contractual relationship when the "existence of a duty may be predicated upon statutory provisions or on common law principle*." Degel v. Majestic Mobile Manor, Inc.,* 129 Wn.2d 43, 49 (1996). It also merely bars recovery of *purely* economic damages when a contractual relationship exists between the parties. *Wells v. Chase Home Fin.*, LLC, No. C10-5001RJB, 2010 WL 4858252, at *6 (W.D. Wash. Nov. 19, 2010). The doctrine "does not bar recovery in tort when the defendant's alleged *misconduct implicates a tort duty that arises independently of the terms of the contract.*" *Eastwood v. Horse Harbor Found., Inc.*, 170 Wash. 2d 380, 393 (2010).

Consequently, "[t]he test is not simply whether an injury is an economic loss arising from a breach of contract, but rather whether the injury is *traceable* also to a breach of a tort law duty of care arising independently of the contract. *Ward v. Bank of Am. Nat'l Ass'n,* No. 2:19-CV-00185, 2019 WL 2103124, at *5 (W.D. Wash. May 14, 2019).; *see e.g. Hartley v. Bank of Am., N.A.,* No. C16-1640RSL, 2017 WL 368274, at *5 (W.D. Wash. Jan. 25, 2017).

RESPONSE TO MOTION TO DISMISS AMENDED
COMPLAINT- 17

1    (Finding that the Plaintiff's claims for negligence against Bank of America, predicated on

2    the Washington's Consumer Loan Act, Consumer Protection Act, and 12 CFR §1024.41,

3    survived a motion to dismiss where the statutes at issue create a duty independent of the

4    contract.); *Swiss Baco Skyline Logging, Inc.,* v. *Haliewicz*, 18 Wn. App. 21, 27 (2005)

5    (Finding Washington Mutual negligently honored a check not bearing the cashing party's

6    name, contrary to the duty created by RCW 62A.3–406, giving rise to negligence liability).

7        Flores's tort claims are not based on "ordinary" servicing activity related to the

8    Plaintiff's mortgage. Rather, the issues in this case concern the actions and statements of

9    Wells Fargo in relation to Wells Fargo's erroneously sending Mr. Flores' funds to a third

10   party, the Chapter 13 trustee, where they were paid to lower priority creditors in breach of

11   the plan who were not otherwise entitled to the funds, thereby causing damages unforeseen

12   by the contract entered between the parties. *Id.* at ¶ 13, Ex. B.[6] These actions also created a

13   fictitious default in violation of multiple statutory duties which took more than a year to

14   identify and resolve.

15       Wells Fargo has duties to Mr. Flores that arose separately from any contractual

16   relationship between the parties. *Ward*, 2019 WL 2103124, at *2. Wells Fargo has statutory

17   duties under RCW 31.04.290(1)(c) to ensure that when "exercising authority to collect

18   escrow amounts" that "no late penalties are assessed, or no other negative consequences

19   result for the borrower." RCW 31.04.290(1)(c) Also, under RCW 31.04.290(1)(b) Wells

20   Fargo has a duty to timely credit payments accepted and within one business day of the date

21   received. RCW 31.04.290(1)(b), Wells Fargo also violated their duty under 12 C.F.R

22   1024.34 in failing to determine whether an escrow overage existed annually, and they did

23   not perform annual escrow analyses that would have avoided the issues as required under 12

24

25

26   [6] The Chapter 13 plan as confirmed only paid the remaining car claim at $100 a month. The Plan would have
     completed and discharged if not for the arrearage to the mortgage creditor as the car was not crucial to completion,

27   as they had a depreciating asset. The Plaintiff requests leave to amend the complaint to the extent needed to clarify
     this point.

RESPONSE TO MOTION TO DISMISS AMENDED
COMPLAINT- 18

HENRY & DEGRAAFF, PS
119 1ST AVE S. STE 500
SEATTLE, WA 98104
206-933-7861 phone 206-933-7863 fax

C.F.R. 1024.17(i).[7] The chart below shows the Notices of Payment Change Wells Fargo

filed with the bankruptcy court and showing the information known at the time of the

bankruptcy filing about escrow issues. Request for Judicial Notice in Support of Response,

at ¶ 2, Ex. 1-7.

| No. | Filed | Eff | Esc Amt | Overage/-Shtg | BK Dkt No. | Comment |
|---|---|---|---|---|---|---|
| 1 | 06/14/2013 | 07/15/2013 | 1,412.48 | -12,489.54 | Dkt No. 53 | Annual Escrow Analysis performed on 3/26/2013. Escrow payment started at $0.02 and was added with an increase to $1,412.48) |
| 2 | 06/17/2014 | 07/15/2014 | 371.68 | 0 | Dkt No. 66 & 67 (Duplicates) | Reason for Change: Payment change resulting from Escrow Shortage Drop-off |
| 3 | 11/08/2014 | 12/15/2014 | 334.59 | 12,256.98 | Dkt No. 69 | Escrow Overage carried over |
| 4 | 07/08/2015 | 09/15/2015 | 228.26 | 12,953.72 | Dkt No. 71 | Annual Escrow Analysis performed on 6/14/2015) |
| 5 | 12/11/2015 | 02/15/2016 | 228.25 | 12,953.72 | Dkt No. 72 | Overage sent to Trustee |
| 6 | 06/29/2016 | 08/15/2016 | 562.37 | -2340.41 | Dkt No. 74 | Shortage due to errors. Add'l claim |
| 7 | 06/21/2017 | 08/15/2017 | 362.44 | 295.67 | Dkt No. 89 | Overage |

Additionally, under the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605(g),

Wells Fargo had additional duties to borrowers, like Mr. Flores that are independent of the

deed of trust and chapter 13 confirmed plan. The statute provides:

> If the terms of any federally related mortgage loan require the borrower to make payments to the servicer of the loan for deposit into an escrow account for the purpose of assuring payment of taxes, insurance premiums, and other charges with respect to the property, the *servicer* shall make payments from the escrow account for such taxes, insurance premiums, and other charges in a timely manner as such payments become due.

*Johnson v. Fed. Home Loan Mortg. Corp.,* No. C12-1712 TSZ, 2013 U.S. Dist.

LEXIS 10485, at *21-22 (W.D. Wash. Jan. 25, 2013).

---

[7] The Amended Complaint referenced several statutory and regulatory violations. Dkt No. 19, at 106, 168-175, 178, 180-182To the extent additional statutes and regulations are referenced in this response, they are fully supported by factual allegations. The Plaintiff requests leave to amend the complaint to the extent needed.

HENRY & DEGRAAFF, PS
119 1ST AVE S. STE 500
SEATTLE, WA 98104
206-933-7861 phone 206-933-7863 fax

Lastly, the Washington Deeds of Trust Act (DTA) "sets forth the procedures and requirements for nonjudicial foreclosures, and Flores as a borrower who was served with pre-foreclosure option notice as required under the DTA is within the class RCW 61.24 was enacted to protect. *See Frias v. Asset Foreclosure Servs.*, Inc., 181 Wash. 2d 412, 423 (2014) (holding that RCW 61.24.127 was enacted to benefit borrowers). Here, Wells Fargo failed to ensure that a default occurred prior to sending a Notice of Pre-Foreclosure Options. RCW 61.24.031(1)(c).

//

//

### 3.   Negligent Misrepresentation Was Plausibly Pled

A negligent misrepresentation claim, unlike the other consumer protection claims alleged in this matter, is premised not merely upon a false representation, but on an injury flowing from *reliance* on the false representation. *Van Dinter v. Orr*, 157 Wn.2d 329, 333, 138 P.3d 608 (2006) (a plaintiff must show that the defendant negligently supplied false information the defendant knew, or should have known, would guide the plaintiff in making a business decision, and that the plaintiff justifiably relied on the false information). For a Negligence claim a Plaintiff must establish the existence of a duty, a breach thereof, a resulting injury, and proximate causation between the breach and the resulting injury." *Schooley v. Pinch's Deli Mkt., Inc.*, 134 Wash.2d 468, 474 (1998). on this claim Flores must prove that (1) Wells Fargo supplied false information for Mr. Flores' guidance, (2) Wells Fargo knew or should have known the information was supplied to guide Flores in his business transactions, (3) Wells Fargo was negligent in obtaining or communicating the information, (4) Flores relied on the information, (5) his reliance was justified, and (6) the false information proximately caused Flores damages. *ECSA v. KPMG Peat Marwick*, 959 P,2d 651, 654 (Wash. 1988)., 959 P,2d 651, 654 (Wash. 1988). For the Negligence claim falsity is not required. *Schooley v. Pinch's Deli Mkt., Inc.*, 134 Wash.2d 468, 474 (1998) (Plaintiff must establish the existence of a duty, a breach thereof, a resulting injury, and

HENRY & DEGRAAFF, PS
119 1ST AVE S. STE 500
SEATTLE, WA 98104
206-933-7861 phone 206-933-7863 fax

proximate causation between the breach and the resulting injury.") Here, Wells Fargo only contests the causation prong found in both negligence claims and the elements of falsity in Negligent Misrepresentation for post-petition communications and claims that Flores has failed to claim any duty for post-bankruptcy communication for negligence. Dkt No. 22 at ¶¶ 12, 16-17, 21, 98.

First, it is uncontested that Wells Fargo supplied false information to the bankruptcy trustee and Mr. Flores during the bankruptcy. Dkt No. 19, Amended Complaint at 68-69. As to the other elements regarding falsity and breach of that duty, *See* Supra, III.E.3 above. As to duty, Wells Fargo violated statutes that govern Wells Fargo's duties to Mr. Flores. *See* Supra, III. E.2. Moreover, Wells Fargo had problems with their computer systems in calculating escrow and applying payments, and yet they failed to do a reconciliation or acknowledge their errors after signing a consent decree with the UST as filed in Maryland and only did so after Mr. Flores reached out to them to demand it. *Id.* at ¶¶ 82-83.

### 4. Conversion

Under the modern jurisprudence, conversion is the unjustified, willful interference with a chattel which deprives a person entitled to the property of possession. *Potter v. Wash. State Patrol*, 165 Wn.2d 67, 78-79 (2008). Wells Fargo committed conversion because Wells Fargo erroneously refunded funds of $12,953.73 on February 6, 2016, to the Chapter 13 trustee who distributed the unanticipated funds to other creditors with lower priority claims who would not have been paid before Wells Fargo's secured claim was paid in full,[8] which funds would have cured any deficiency on the secured vehicle claim. *Id.* at ¶¶ 21, 98, Alternatively, Wells Fargo caused the payments that had been sent by Mr. Flores to be wrongly paid to third parties, instead of being retained by Wells Fargo and credited toward his loan as Mr. Flores and the confirmed plan intended. *Id.,* at ¶ 13, Ex. B. Finally, after the bankruptcy, Mr. Flores tendered a good faith but ultimately unnecessary "cure" payment of $13,424.60 which deprived him of those funds under the false pretense that there was an arrearage on his account. *Id,* at ¶¶ 36, 38.

---

[8] *See* Dkt. No. 19, Amended Complaint, at ¶ 13, Ex. B and ¶ 70, Ex. G.

HENRY & DEGRAAFF, PS
119 1ST AVE S. STE 500
SEATTLE, WA 98104
206-933-7861 phone 206-933-7863 fax

1

### 5.  Outrage

2      Flores never admits the loan was in default. On the contrary, Mr. Flores merely relied on

3  erroneous information from Wells Fargo that he had no ability to challenge, until he discovered

4  years later when Wells Fargo retracted their prior statements, that he was current at the end of his

5  bankruptcy, and any false default was caused by Wells Fargo's errors, that is why this is

6  outrageous! Dkt No. 19, Amended Complaint, at ¶¶ 68, 69, 70.

7      The elements of the tort of outrage that a plaintiff must prove are: (1) extreme and

8  outrageous conduct; (2) intentional or reckless infliction of emotional distress; and (3) actual

9  severe emotional distress suffered by the plaintiff. *Birklid v. Boeing Co.,* 127 Wn.2d 853 (1995).

10  The outrageous conduct must be "so outrageous in character, and so extreme in degree, as to go

11  beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in

12  a civilized community." *Grimsby v. Samson,* 85 Wn.2d 52, 59 (1975). "Although these three

13  elements are questions of fact for the jury, the Court must initially 'determine if reasonable

14  minds could differ on whether the conduct was sufficiently extreme to result in liability.'

15  " *Sergeant v. Bank of Am., N.A.,* No. C17-5232 BHS, 2018 WL 1427345, at *5 (W.D. Wash.

16  Mar. 22, 2018) (quoting *Dicomes v. State*, 113 Wn.2d 612, 630 (1989)).

17      Flores cured his mortgage loan in his chapter 13 bankruptcy, but Wells Fargo insisted for

18  years that he was delinquent, causing great personal and financial loss. *See* Dkt No. 19,

19  Amended Complaint, at ¶¶ 14, 19, 29, 33, 82, 83, 84, 85, 87. Wells Fargo's instance that Flores

20  was delinquent continued for years, and caused the Plaintiff great stress and personal pain, as

21  would be expected when one's home is threatened with foreclosure for no valid reason. *Id.* at

22  ¶ 32-33. The constant threat of losing his home, the actual loss of personal property impacting

23  his business, and the years of refusal to face the problem make Wells Fargo's conduct

24  particularly outrageous. *Id.* at ¶ 147.

25      Wells Fargo insists that it cannot be liable for outrage because Flores was in fact in

26  default. Dkt No. 22 at 25. Wells Fargo is continually ignoring the fact that the default was

27  entirely created by Wells Fargo, as they admit. *See* Dkt No. 19, Amended Complaint, at ¶ 68-69.

HENRY & DEGRAAFF, PS
119 1ST AVE S. STE 500
SEATTLE, WA 98104
206-933-7861 phone 206-933-7863 fax

1  To insist that they did nothing wrong and followed their obligations is appalling and at least

2  merits consideration by a jury as outrageous conduct. *Id.* at ¶ 24.

3    **F.  ECOA Claims are Plausible**

4    The ECOA provides that "[w]ithin thirty days ... after receipt of a completed

5  application for credit, a creditor shall notify the applicant of its action on the application,"

6  and "[e]ach applicant against whom adverse action is taken shall be entitled to a statement of

7  reasons for such action from the creditor." 15 U.S.C. § 1691(d)(1), (2), 12 CFR §

8  1002.9(a)(1)(iii). "When a creditor takes an adverse action against an applicant without

9  giving the required notice, the applicant may sue for a violation of ECOA." *Schlegel v.*

10 *Wells Fargo Bank, N.A.*, 720 F.3d 1204, 1210 (9th Cir. 2013)[9]

11   Under ECOA, any "adverse action" includes "a change in the terms of an existing

12 credit arrangement, or a refusal to grant credit in substantially the amount or on substantially

13 the terms requested." 15 U.S.C. § 1691(d)(6). *Schlegel* held that a lender "revokes credit

14 when it annuls, repeals, rescinds or cancels a right to defer payment of a debt." *Schlegel* at

15 1211. ECOA does not define "revocation", so the court in *Schlegel* looked to the Oxford

16 English Dictionary for its plain meaning: "The action of revoking, rescinding, or annulling;

17 withdrawal." *Schlegel* at 1210 (quoting Oxford English Dictionary 838 (2nd ed. 1989). Quite

18 simply, "A modification of an existing loan is an extension of credit for ECOA purposes."[10]

19   Here, Mr. Flores submitted a complete application for a loan modification by March

20 2, 2018. Dkt No. 19 at ¶ 24. On March 12, 2018, Wells stated it refused to consider Mr.

21 Flores' request for an extension of credit in the form of a loan modification. *Id.* at ¶ 31.

22 Wells Fargo claims that they were not required to provide a reason for the denial of an

23 extension of credit because the Plaintiff was delinquent on his loan payment, but as alleged

24

25 [9] *citing Thompson v. Galles Chevrolet Co.,* 807 2 F.2d 163, 166 (10th Cir. 1986), which observed that if a creditor
   fails to satisfy the ECOA's notice requirements, "he is in violation of the ECOA, regardless of whether he engaged
26 in any prohibited discriminatory action").
   [10] *See Estate of Davis v. Wells Fargo Bank,* 633 F.3d 529 (7th Cir. 2011)." *Watts v. JP Morgan Chase Bank, N.A.,*
27 No. 5:11-CV-02780-LHK, 2012 WL 3638537, at *3 (N.D. Cal. Aug. 22, 2012), citing *Estate of Davis v. Wells
   Fargo Bank,* 633 F.3d 529 (7th Cir. 2011).

RESPONSE TO MOTION TO DISMISS AMENDED
COMPLAINT- 23

HENRY & DEGRAAFF, PS
119 1ST AVE S. STE 500
SEATTLE, WA 98104
206-933-7861 phone 206-933-7863 fax

in the complaint and as illustrated by Wells Fargo's later refund, Mr. Flores was current and sought a modification in good faith reliance on his purported default. Dkt No. 22 at ¶ 9. Yet the only deficiency was the one artificially created by Wells Fargo. Wells Fargo is therefore required to provide notice of the reason for their denial of a loan modification under 15 U.S.C. § 1691(d)(6). As with the bankruptcy dismissal, Wells Fargo should not be allowed to seek refuge in their mistakes to avoid their obligations under the ECOA.

### G.  RESPA Claims are Valid

Flores submitted a loan modification application in February of 2018 Dkt No. 19 at ¶¶ 24, 25, and 27. Flores asserts the application was complete as of March 2, 2018.[1] RESPA requires the loan servicer to confirm whether the borrower's submission constitutes a "complete loss mitigation application." 12 C.F.R. § 1024.41(b)(2)(i)(A) and 12 C.F.R. § 1024.41(b)(2)(i)(B). On March 12, 2018, rather than confirm whether his materials constituted a complete application, Wells Fargo erroneously informed Mr. Flores' prior counsel: "we are not moving forward with a review of the mortgage for assistance. We based our decision on a review of the mortgage history, the recent information you provided us, and the current circumstances surrounding the mortgage." *Id.* at ¶¶ 24, 25, and 27. Wells Fargo appears to contend that the adverse action notice provisions of RESPA do not apply because it never reviewed his mortgage for assistance and therefore never denied his application. To the extent that its letter constitutes a notice of adverse action, Wells Fargo failed to explain what it meant when it cited the "current circumstances surrounding the mortgage" as a basis for its adverse action. To the extent Wells Fargo contends no adverse action occurs absent a decision to deny a reviewed application, it wrongfully seeks to evade RESPA's denial provisions in contravention of 12 C.F.R. § 1024.41(c)(1)(i) and engages in an adverse action subject to the provisions of 12 C.F.R. § 1024.41(d).

---

[1] Mr. Flores will move for leave to amend his First Amended Complaint to more completely describe his ultimately futile efforts to seek loss mitigation assistance.

HENRY & DEGRAAFF, PS
119 1ST AVE S. STE 500
SEATTLE, WA 98104
206-933-7861 phone 206-933-7863 fax

RESPA further contemplates that loan servicers will respond to a borrower's request for account information within 30 days. 12 C.F.R. § 1024.36(d)(2)(i)(B).   RESPA further requires the loan servicer to conduct a "reasonable" search for the requested information. 12 C.F.R. § 1024.36(d)(1). Wells Fargo received the borrower RESPA requests for information and/or notice of error in April of 2018 and did not complete its investigation until March of 2019. Mr. Flores reasonably did not wait for an answer and presumed he erred by tendering a cure payment before requesting the investigation.  Even the least sophisticated consumer could reasonably presume a national bank of the scale and sophistication of Wells Fargo maintains account records that it could quickly and easily reconcile. It is inherently unreasonable for Wells Fargo to take more than 30-days to investigate an account question whose answer might very well reveal error by the consumer facing foreclosure. A delay of more than ten months in reconciling the borrower's account is neither timely nor reasonable because it should have never bungled his account in the first place.

## IV.    CONCLUSION

For the forgoing reasons, TRC's Motion for Judgment on the Pleadings should be denied. To the extent that any of the Plaintiff's claims are found to be inadequately pled, the Plaintiff requests leave to amend the complaint.

Respectfully submitted this 9th day of June 2021.

BARRAZA LAW, PLLC

/s/ V. Omar Barraza
V. Omar Barraza, WSBA #43589
10728 16th Avenue SW
Seattle, Washington 98146
omar@barrazalaw.com
Tel.: (206) 933-7861
Fax.: (206) 933-7863

HENRY & DEGRAAFF, PS

/s/ Christina L. Henry
Christina L. Henry, WSBA #31273
119 1st Ave S, Ste 500
Seattle, Washington 98104
chenry@hdm-legal.com
Tel.: (206) 330-0595
Fax: (206) 400-7609

RESPONSE TO MOTION TO DISMISS AMENDED
COMPLAINT- 25

HENRY & DEGRAAFF, PS
119 1ST AVE S. STE 500
SEATTLE, WA 98104
206-933-7861 phone 206-933-7863 fax