UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JULIAN FLORES, a/k/a JULIAN FLORES SANCHEZ,<br><br>Plaintiff,<br><br>v.<br><br>WELLS FARGO BANK, N.A.,<br><br>Defendant. | Cause No. C21-0006RSL<br><br>ORDER GRANTING IN PART DEFENDANT'S MOTION TO DISMISS |

This matter comes before the Court on the "Motion to Dismiss Amended Complaint by Wells Fargo Bank, N.A." (Dkt. # 22) and the parties' requests for judicial notice (Dkt. # 23 and # 28). Plaintiff alleges that defendant Wells Fargo failed to accurately record and report all payments made on a mortgage loan during plaintiff's Chapter 13 bankruptcy proceeding and unreasonably delayed reconciling the account. In particular, plaintiff alleges that Wells Fargo applied his post-petition payments to an escrow account and an "unapplied funds account," causing an overage in the escrow balance and a deficiency in the mortgage account. Dkt. # 19 at ¶ 80. The mishandling of the payments allegedly delayed the bankruptcy proceeding beyond 60 months, resulting in its dismissal and depriving plaintiff of the discharge that had previously been negotiated. In addition, plaintiff was compelled to pay the misstated arrearage in order to

ORDER GRANTING IN PART
DEFENDANT'S MOTION TO DISMISS - 1

avoid foreclosure and lost assets he otherwise would have preserved had his bankruptcy plan been confirmed. His mortgage loan ballooned uncontrollably with interest, fees, and penalties assessed on amounts that had been paid but misapplied.

Plaintiff, a native Spanish speaker, had to hire counsel and an accounting professional to help him understand what went wrong and to get Wells Fargo to take his complaints and requests for information seriously. Wells Fargo ultimately made a "business decision" to refund $13,195.11 to plaintiff in March 2019. Dkt. # 19 at ¶ 71. Plaintiff alleges that thousands of accounts have been impacted in the same way due to systemic issues related to the program Wells Fargo uses to analyze escrow accounts. Plaintiff further alleges that his loved ones lost their trust in his ability to provide and protect their family and began to doubt his repeated assertions that his continuing financial troubles were Wells Fargo's fault, causing him emotional distress, rage, despair, guilt, anxiety, physical injuries, and a divorce.

Plaintiff asserts claims of breach of contract, breach of the implied duty of good faith and fair dealing, negligent misrepresentation, negligence, conversion, outrage, and violations of the Washington Consumer Protection Act, the Washington Equal Credit Opportunity Act, and the federal Real Estate Settlement Procedures Act. Wells Fargo seeks dismissal of all of plaintiff's claims with prejudice.

The question for the Court on a motion to dismiss is whether the facts alleged in the complaint sufficiently state a "plausible" ground for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In the context of a motion under Rule 12(b)(6) of the Federal Rules of Civil

ORDER GRANTING IN PART
DEFENDANT'S MOTION TO DISMISS - 2

Procedure, the Court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008) (citation omitted). The Court's review is generally limited to the contents of the complaint. *Campanelli v. Bockrath*, 100 F.3d 1476, 1479 (9th Cir. 1996). "We are not, however, required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

> To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face." []*Twombly*, 550 U.S. [at 570]. A plausible claim includes "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *U.S. v. Corinthian Colls.*, 655 F.3d 984, 991 (9th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Under the pleading standards of Rule 8(a)(2), a party must make a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). . . . A complaint "that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Thus, "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

*Benavidez v. Cty. of San Diego*, 993 F.3d 1134, 1144–45 (9th Cir. 2021). If the complaint fails to state a cognizable legal theory or fails to provide sufficient facts to support a claim, dismissal is appropriate. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010).

ORDER GRANTING IN PART
DEFENDANT'S MOTION TO DISMISS - 3

Having reviewed the memoranda, declarations, and exhibits submitted by the parties and taking the factual allegations in the light most favorable to plaintiff, the Court finds as follows:

### A. Request for Judicial Notice

As noted above, when ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court's review is generally limited to the allegations of the complaint, documents attached to or incorporated by reference into the complaint, and matters of judicial notice. *U.S. v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003). The parties have offered, without objection, documents filed in other court proceedings and a letter referenced in the Amended Complaint. The Court has considered the documents in ruling on the motion to dismiss.

### B. Preemption of State Law Claims

In its motion, Wells Fargo asserts that plaintiff's state law claims are barred because the payments it is accused of mishandling were made in connection with a bankruptcy case and plaintiff's sole avenue for relief or remedy therefore lies in the bankruptcy court. Determining whether the bankruptcy laws preempt state law requires an evaluation of whether Congress intended the bankruptcy code and rules to provide "the exclusive cause of action" for damages resulting from a bank's negligent handling of mortgage payments and related breach of the mortgage agreement. *In re Miles*, 430 F.3d 1083, 1088 (9th Cir. 2005) (quoting *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8-9 & n.5 (2003)). The Ninth Circuit has identified a number of factors to guide the inquiry, including whether Congress expressly provided that the bankruptcy laws provides the exclusive basis for an award of damages for particular conduct (*In re Miles*,

ORDER GRANTING IN PART
DEFENDANT'S MOTION TO DISMISS - 4

430 F.3d at 1089), whether the structure and purpose of the bankruptcy code reveals such an intent (*Id.*), whether the state claim would interfere with the uniform application of the bankruptcy laws (*MSR Expl., Ltd., v. Meridian Oil, Inc.*, 74 F.3d 910, 914 (9th Cir. 1996)), whether allowing a state law claim to proceed would disrupt the congressional grant of exclusive bankruptcy jurisdiction to the federal courts and/or the "complex, detailed, and comprehensive" bankruptcy procedures for adjusting the rights of debtors and creditors (*Id.* at 913-14), and whether the bankruptcy code addresses the type of improper conduct alleged, thereby indicating "that Congress has considered the need to deter misuse of the process and has not merely overlooked the creation of additional deterrents" (*Id.* at 915). After considering these factors, the Ninth Circuit has held that a creditor's claim that the filing of a bankruptcy petition was an abuse of process (*Gonzales v. Parks*, 830 F.2d 1033 (9th Cir. 1987)), a debtor's assertion that the filing of a claim in a bankruptcy proceeding constituted malicious prosecution (*MSR Expl.*, 74 F.3d 910), a debtor's lawsuit for damages predicated on the filing of an involuntary bankruptcy petition (*In re Miles*, 430 F.3d 1083), and even federal causes of action to enforce a bankruptcy discharge order (*Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502 (9th Cir. 2002)) arise under the bankruptcy code and must be resolved in the bankruptcy courts.

Wells Fargo did not mention, much less discuss, any of the relevant considerations in its motion, instead suggesting that there is a categorical bar against state law claims that arise out of actions that occurred in connection with a bankruptcy proceeding. Dkt. # 22 at 11-12. *Contra In re Miles*, 430 F.3d at 1092 ("We do not hold that all state actions related to bankruptcy

ORDER GRANTING IN PART
DEFENDANT'S MOTION TO DISMISS - 5

proceedings are subject to the complete preemption doctrine."). When plaintiff pointed out that there is no categorical bar and that congressional intent and the policy implications of pursing a state law claim must be considered in order to determine whether preemption is appropriate, Wells Fargo took the position in reply that any claim arising out of payments or filings made in a bankruptcy proceeding is preempted. Dkt. # 31 at 6. Again, Wells Fargo declined to discuss congressional intent, the bankruptcy code, or how adjudication of plaintiff's claims would interfere with bankruptcy procedures or decisions. The mere fact that plaintiff made his mortgage payments through the Chapter 13 trustee and that Wells Fargo affirmatively misstated the account balances to the bankruptcy court does not establish that the claims arise under bankruptcy law or are otherwise preempted.

In *Manikan v. Peters & Freedman, LLP*, 981 F.3d 712 (9th Cir. 2020), the debtor made payments to a secured creditor pursuant to his confirmed Chapter 13 bankruptcy plan. The bankruptcy trustee was informed that the arrearage was paid off, and the trustee filed a "Notice of Final Cure Payment and Completion of Payments Under the Plan" verifying that the debt was paid in full. *Id.* at 714. The bankruptcy court subsequently entered an order of discharge. When the creditor nevertheless initiated foreclosure proceedings, the debtor sued for unfair debt collection practices.[1] Because the debt was paid prior to discharge and the debtor was not

---

[1] Wells Fargo attempts to distinguish *Manikan* on the ground that the challenged cause of action arose under federal law and the case therefore did not involve a claim of preemption. While true, the distinction is not determinative. The analysis described in the text is applied regardless whether the claim asserted arises under federal or state law. *See Walls*, 276 F.3d at 510. The fact that the claim will be "barred" or "precluded" in one context and "preempted" in the other does not change the analysis: the claim will generally fail only if it runs afoul of congressional intent, threatens to disturb bankruptcy

ORDER GRANTING IN PART
DEFENDANT'S MOTION TO DISMISS - 6

attempting to remedy a violation of the discharge order, the Ninth Circuit concluded that the unfair debt collection practices claim was an independent theory of relief that could be pursued without forcing the court to make "bankruptcy-laden determinations" and without entangling the district court (or a jury) in the "complex, detailed, and comprehensive provisions" of the bankruptcy code. *Id.* at 716-17. Just because the debtor "made his arrearage payments through operation of a bankruptcy plan does not render his [unfair debt collections practice] claims inextricably intertwined with bankruptcy issues." *Id.* at 717. The same appears to be the case here – or at least Wells Fargo has made no effort to show that determining whether it breached the mortgage agreement, negligently accounted for and represented the mortgage payments, converted plaintiff's funds, acted outrageously, or violated Washington statutes will hinge on bankruptcy-related questions.

**C. Statute of Limitations**

Wells Fargo argues that plaintiff's negligence, negligent misrepresentation, conversion, and outrage claims are barred by a three-years statute of limitations (at the longest). Plaintiff alleges that on May 31, 2017, Wells Fargo notified the bankruptcy court that plaintiff had not paid eight post-petition mortgage payments, totaling $15,663.12. Dkt. # 19 at ¶ 16. Wells Fargo noted that it was reconciling plaintiff's account and would amend its response if necessary. *Id.* at

---

procedures, remedies, or decisions, or entangles the court in the complex and uniform rules for adjusting the rights of debtors and creditors.

ORDER GRANTING IN PART
DEFENDANT'S MOTION TO DISMISS - 7

¶ 17. No amendment was filed. *Id.* at ¶ 18. The bankruptcy proceeding was dismissed on December 1, 2017. Dkt. # 19-5 at 2.

Plaintiff retained counsel in January 2018. Wells Fargo sent plaintiff a notice of pre-foreclosure options in March 2018. Dkt. # 19 at ¶ 32. Although plaintiff "was angry, confused, and feeling despair that he would end up losing his house even though Wells Fargo was the one that screwed up his mortgage account" and he demanded that Wells Fargo explain how he could be delinquent when his "payments were made timely and completely through the bankruptcy plan," plaintiff paid the amount demanded in order to save his home from foreclosure. *Id.* at ¶¶ 33, 37, and 38. Plaintiff asserted that Wells Fargo had mishandled his mortgage payments and requested information regarding the alleged delinquency. *Id.* at ¶¶ 37 and 39. At the end of February 2019, Wells Fargo sent plaintiff a check for over $13,000, indicating that it was "for misapplication reversal." *Id.* at ¶ 66. On March 5, 2019, Wells Fargo acknowledged that there had been delays in the posting of payments during the bankruptcy proceeding and that it had made corrections. *Id.* at ¶ 67. "After further review, a business decision was made to remediate funds" to plaintiff. *Id.* at ¶ 71.[2] A month later, Plaintiff notified Wells Fargo that he intended to sue. *Id.* at ¶ 72. This lawsuit was filed approximately eight months later on January 4, 2021.

Although plaintiff alleges that he was unaware of the "true nature and scope of Wells Fargo's" wrongdoing until the bank sent its March 5, 2019, letter admitting irregularities in the

---

[2] Plaintiff received another check from Wells Fargo in June 2019 in the amount of $1,968.37. Dkt. # 19 at ¶ 78.

ORDER GRANTING IN PART
DEFENDANT'S MOTION TO DISMISS - 8

handling of plaintiff's account, the limitations period started to run long before plaintiff had a full understanding of the alleged wrongful conduct and its implications.

> The general rule in Washington is that when a plaintiff is placed on notice by some appreciable harm occasioned by another's wrongful conduct, the plaintiff must make further diligent inquiry to ascertain the scope of the actual harm. The plaintiff is charged with what a reasonable inquiry would have discovered. "[O]ne who has notice of facts sufficient to put him upon inquiry is deemed to have notice of all acts which reasonable inquiry would disclose." *Hawkes v. Hoffman*, 56 Wash. 120, 126 (1909). *Accord Enterprise Timber, Inc. v. Washington Title Ins. Co.*, 76 Wn.2d 479, 482 (1969); *Am. Sur. Co. of N.Y. v. Sundberg*, 58 Wn.2d 337, 344 (1961) ("notice sufficient to excite attention and put a person on guard, or to call for an inquiry is notice of everything to which such inquiry might lead.").

*Green v. A.P.C. (Am. Pharm. Co.)*, 136 Wn.2d 87, 96 (1998). Plaintiff knew as of May 2017 that Wells Fargo was claiming that he had not made eight mortgage payments during the pendency of the bankruptcy proceeding and was demanding that he cure the deficiency. He also knew that he had, in fact, made the payments. He hired a lawyer in January 2018, almost three years before he filed this lawsuit. His argument that he "could not be sure whether he or Wells Fargo caused the apparent account deficiency" is wholly unsupported by the Amended Complaint. Dkt. # 27 at 15. In fact, plaintiff specifically alleges that "it was obvious from a review of the history of payments since the filing of [p]laintiff's bankruptcy in 2011 that there was no reason why his loan would be delinquent and that any delinquency was due to an error on the part of Wells Fargo." *Id.* at ¶ 101. This information was equally available to both plaintiff and Wells Fargo. Having been aware of facts sufficient to excite inquiry, plaintiff is deemed to

ORDER GRANTING IN PART
DEFENDANT'S MOTION TO DISMISS - 9

have notice of what a reasonable inquiry would have shown.[3] His negligence, negligent misrepresentation, conversion, and outrage claims are barred by the statute of limitations.

**D. Independent Duty Doctrine**

Because plaintiff's tort claims are barred by the statute of limitations, the Court need not determine whether they are also subject to the independent duty doctrine.

**E. Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691, *et seq*.**

The ECOA is designed to prevent discriminatory lending practices. *Miller v. Am. Exp. Co.*, 688 F.2d 1235, 1238 (9th Cir. 1982). In an effort to achieve that goal, the act requires that "[e]ach applicant against whom adverse action is taken shall be entitled to a statement of reasons for such action from the creditor." 15 U.S.C. § 1691(d)(2). Plaintiff alleges that Wells Fargo denied his request to be considered for a loan modification. He asserts that the request made him an "applicant," that the denial falls within the statutory definition of "adverse action," and that Wells Fargo failed to provide the required "statement of reasons for such action." Dkt. # 19 at ¶¶ 154-59 and 161. Wells Fargo asserts that when a creditor denies a loan modification request by a delinquent creditor, it is not considered an "adverse action" under the ECOA. Dkt. # 22 at 16. See 15 U.S.C. § 1691(d)(6) ("For purposes of this subsection, the term "adverse action" . . . does not include a refusal to extend additional credit under an existing credit arrangement where

---

[3] Plaintiff's equitable estoppel argument is unavailing. The fact that Wells Fargo did not affirmatively admit to wrongdoing until March 2019 does not give rise to an inference of fraud or inequitable conduct prior to that date. Nor does plaintiff explain how his good faith in continuing to make additional mortgage payments as they became due suspends the statute of limitations.

ORDER GRANTING IN PART
DEFENDANT'S MOTION TO DISMISS - 10

the applicant is delinquent or otherwise in default, or where such additional credit would exceed a previously established credit limit."). Be that as it may, plaintiff specifically alleges that he was not in default on his payments at the time of the request. Dkt. # 19 at ¶¶ 155 and 160. The facts as alleged raise a plausible inference that plaintiff was not delinquent or otherwise in default on his loan, and that the accounting on which Wells Fargo apparently relied was simply in error. Plaintiff's ECOA claim may proceed.

**F. Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605(e)**

RESPA authorizes borrowers to notify mortgage lenders that they believe their account is in error and/or to request information regarding the servicing of the loan. 12 U.S.C. § 2605(e)(1). Once a qualified written request ("QWR") is received, the lender has five days to acknowledge the request and thirty days in which to make corrections or to conduct a reasonable investigation and provide the borrower a written explanation or clarification. 12 U.S.C. § 2605(e)(1)(A) and (e)(2); 12 C.F.R. § 1024.35(e)(1)(i). Plaintiff alleges that Wells Fargo failed to conduct a reasonable investigation of his notice of error and that its March 5, 2019, communication was both untimely and unintelligible. Dkt. # 19 at ¶¶ 176-77 and 179. He also alleges that he submitted a loan modification application in the spring of 2018 and that Wells Fargo violated RESPA's implementing regulations by failing to state "the specific reason or reasons" for the denial of the modification and failing to evaluate whether plaintiff was eligible for an available home loan modification program. *Id.* at ¶¶ 24-27 and 180-82; 12 C.F.R. § 1024.41(c) and (d).

ORDER GRANTING IN PART
DEFENDANT'S MOTION TO DISMISS - 11

Wells Fargo points out that "the Amended Complaint identifies nearly 30 communications that plaintiff received from Wells Fargo regarding the status and results of its investigation" following receipt of plaintiff's April 2018 notice of error and request for information. Dkt. # 22 at 17. A series of communications over the course of eleven months indicating "we will get back to you," asking if plaintiff were still represented by counsel, and/or enclosing checks with little or no explanation is at least arguably violative of RESPA's requirements. The thrust of plaintiff's claim is that Wells Fargo's communications were not only untimely, but were also not the product of a reasonable investigation given that the errors in handling plaintiff's payments would have been apparent had Wells Fargo bothered to look. Plaintiff has adequately alleged a claim under the communication and investigation provisions of RESPA.

Wells Fargo further asserts that any claim for violation of 12 C.F.R. § 1024.41 fails as a matter of law because plaintiff has not alleged that he submitted a "complete loss mitigation application" as required under subsection (b)(2)(i). But the regulations put the onus on the lender to determine whether a loss mitigation application is "complete," to notify the borrower in writing within five days if more information is needed, and to establish a reasonable date by which the borrower should submit additional documents or information. 12 C.F.R. § 1024.41(b)(2)(i) and (ii). Plaintiff alleges that Wells Fargo declined to consider the request for mortgage assistance based on a "review of the mortgage history, the recent information you provided us, and the current circumstances surrounding the mortgage." Dkt. # 19 at ¶ 27. There

ORDER GRANTING IN PART
DEFENDANT'S MOTION TO DISMISS - 12

is no indication that Wells Fargo deemed the application incomplete, notified the borrower of such a determination, or gave plaintiff an opportunity to supplement his submission. Plaintiff's allegations raise a plausible inference that the application was complete.

The Court has not considered the RESPA-related arguments Wells Fargo raised for the first time in its reply memorandum. The RESPA claim may proceed.

**G. Causation**

Wells Fargo argues that plaintiff's contractual claims and his Consumer Protection Act claim fail as a matter of law because he has not alleged facts from which one could plausibly infer that Wells Fargo's allegedly wrongful conduct caused the damages of which plaintiff complains. Plaintiff's contract and consumer protection claims are based on Wells Fargo's failure to properly credit his payments under the loan documents,[4] its failure to perform a complete, thorough, and timely review of plaintiff's loan account, and its demand for payments that were not actually due and owing under the contract. Wells Fargo argues that plaintiff has failed to adequately allege that its conduct was causally related to the dismissal of plaintiff's bankruptcy proceeding.

The dismissal of the bankruptcy proceeding is just one aspect of the damages plaintiff alleges flowed from Wells Fargo's mishandling of his loan payments. According to plaintiff,

---

[4] Plaintiff may also be asserting a breach of the bankruptcy reorganization plan. Because it is not clear that a debtor (or creditor) would have a private right of action to enforce a reorganization plan outside of the bankruptcy court, the Court has not considered that potential claim when evaluating whether plaintiff has plausibly alleged causation.

ORDER GRANTING IN PART
DEFENDANT'S MOTION TO DISMISS - 13

Wells Fargo's misconduct began during the pendency of his bankruptcy proceeding, but continued unabated for years. Reading the Amended Complaint in the light most favorable to plaintiff, he alleges that Wells Fargo's mishandling of and misstatements about his loan payments during the bankruptcy proceeding deprived him of the benefits expected from his confirmed bankruptcy plan, prevented him from meeting his obligations under the reorganization plan, and ultimately resulted in the dismissal of the bankruptcy proceeding because he was unable to complete the reorganization within sixty months. Dkt. # 19 at ¶¶ 14, 96, and 98. The failure of his bankruptcy plan meant that plaintiff had to surrender certain assets to creditors that would otherwise have been protected and that he was deprived of a discharge order. All of these damages are related to the dismissal of the bankruptcy proceeding, and Wells Fargo may be able to show that plaintiff's failure to pursue relief or remedy in the bankruptcy court was the sole proximate cause of these injuries.

Even if defendant is successful in this regard, however, plaintiff also alleges that Wells Fargo's demand that he cure a non-existent deficiency of $15,663.12 resulted in the initiation of foreclosure proceedings, which forced plaintiff to hire an attorney, attempt to obtain a modification of the loan, and ultimately pay the amount demanded in order to save his homestead. Plaintiff spent years asking Wells Fargo for information and consulting an expert in an effort to figure out what went wrong and convince the bank that he was not in default. By the time Wells Fargo acknowledged its error, corrected the account, and returned the funds, plaintiff had lost opportunity costs, had suffered adverse tax consequences, and had incurred attorney and

ORDER GRANTING IN PART
DEFENDANT'S MOTION TO DISMISS - 14

expert expenses. Thus, even if, as Wells Fargo argues, it is ultimately able to show that the dismissal of plaintiff's bankruptcy proceeding was the result of his own inaction rather than Wells Fargo's insertion of an additional demand for payment, plaintiff has identified other damages causally related to Wells Fargo's erroneous demand. Plaintiff has adequately alleged damages flowing from defendant's conduct.

**H. Breach of Contract and Breach of the Implied Duty of Good Faith and Fair Dealing**

Wells Fargo ignores the allegations of the Amended Complaint to argue that plaintiff has failed to identify a contractual provision that was breached. To the contrary, plaintiff alleges that Wells Fargo was required by the loan documents to apply plaintiff's loan payments for specific purposes and in a specific order. Dkt. # 19 at ¶ 91; Dkt. # 19-1 at 11.[5] Plaintiff further alleges that Wells Fargo improperly credited his payments almost entirely to his escrow account, despite no amounts being due and owing in that area, and therefore failed to apply the funds to his outstanding interest and principal as required by the Deed of Trust. Dkt. # 19 at ¶ 70. If, as Wells Fargo incorrectly argues, there were no express term of the contract requiring the lender to apply a borrower's payments toward debts that were actually due and owing, the implied duty of good faith and fair dealing would undoubtedly fill the gap and preclude a lender from randomly applying payments to a fully paid account while leaving a deficiency in another

---

[5] Again, the Court declines to determine whether plaintiff has a private cause of action to enforce the terms of the reorganization plan confirmed by the bankruptcy court.

ORDER GRANTING IN PART
DEFENDANT'S MOTION TO DISMISS - 15

account and then charging late fees and penalties on the deficiency it created. Plaintiff has adequately alleged a duty.

For all of the foregoing reasons, defendants' motion to dismiss (Dkt. # 22) is GRANTED in part and DENIED in part. Plaintiff's negligence, negligent misrepresentation, conversion, and outrage claims are barred by the statute of limitations and therefore DISMISSED. The other claims may proceed.

Dated this 26th day of August, 2022.

Robert S. Lasnik
United States District Judge

ORDER GRANTING IN PART
DEFENDANT'S MOTION TO DISMISS - 16